UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff,

v.

FRY'S ELECTRONICS, INC.,

Defendant.

No. C10-1562RSL

ORDER GRANTING KA LAM'S MOTION TO INTERVENE AND BIFURCATING DISCOVERY

This matter comes before the Court on "Intervenor-Plaintiff Ka Lam's Motion to Intervene and Strike Defendant's Purported Arbitration Agreement" (Dkt. # 7) and Fry's Electronics Inc.'s "Cross Motion to Compel Arbitration and Stay" (Dkt. # 9). The parties agree that Lam should be permitted to intervene as of right in the above-captioned matter.

Defendant seeks to compel arbitration of Lam's claims pursuant to an August 2003 "Agreement to Arbitrate Disputes Regarding Employment." Lam argues that the agreement to arbitrate (a) is unenforceable because it was not supported by independent consideration, (b) is illusory, (c) has been waived by defendant, (d) was signed by someone other than Lam, and (e) would, if enforced, deprive Lam of substantive rights under Title VII. Having considered the

memoranda, declarations, and exhibits submitted by the parties[1] and having heard the arguments of counsel, the Court finds as follows:

**A. Lack of Consideration**

The Federal Arbitration Act ("FAA") provides that arbitration clauses are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A party may challenge the enforceability of an arbitration agreement by raising any defense that would be available to it under the general contract law of the applicable state. Cox v. Ocean View Hotel Corp., 533 F.3d 1114, 1121 (9th Cir. 2008). Lam argues that the August 25, 2003, arbitration agreement is invalid because it lacks consideration, an essential element of a contract under Washington law. DePhillips v. Zolt Constr. Co., Inc., 136 Wn.2d 26, 31, 36 (1998).

The general rule in Washington is that contracts signed when an employee is first hired, such as non-competition agreements, arbitration clauses, and confidentiality provisions, are supported by consideration. See Labriola v. Pollard Group, Inc., 152 Wn.2d 828, 834 (2004). In that context, both parties make promises and incur new obligations: the employer promises to hire the employee in exchange for the employee's promise to comply with the policies, procedures, and terms set forth in the contract. The general rule applies here. In exchange for the arbitration agreement (among other documents) that Lam purportedly signed on August 25, 2003, defendant took him into its employ. Consideration therefore existed for Lam's promise to arbitrate disputes arising out of his employment with defendant.

Lam argues that the arbitration agreement itself establishes that no consideration existed. Under Washington law, a promise to continue an at-will employment relationship, with no increase in wages, change in responsibilities, promise of training, or other material alteration

---

[1] The Court has not considered the supplemental authority Lam submitted on February 9, 2011. Dkt. # 40). The information was available and relevant from the first filing in this matter and should have been presented with plaintiff's motion.

in the relationship, is not consideration for a post-employment modification or additional agreement. See Labriola, 152 Wn.2d at 834. The first sentence of the August 25, 2003, agreement states that the agreement is "[i]n consideration of the continuation of the employment relationship." Decl. of Lisa Souza (Dkt. # 10), Ex. A. Lam therefore argues that the only consideration for the promise to arbitrate was the promise to continue the employment relationship, which is ineffective under Washington law. Lam ignores the reality of the situation, however. The existence or non-existence of consideration is not determined by the recitals of the written instrument. Zackovich v. Jasmont, 32 Wn.2d 73, 83 (1948). Rather, the Court compares the nature of the relationship before and after contracting to determine whether consideration was exchanged. Labriola, 152 Wn.2d at 836. Lam signed the arbitration agreement, if at all, on the date he was first hired by defendant. Because the relationship between Lam and defendant materially changed at the time of contracting, with both parties taking on new obligations, consideration for the August 25, 2003, arbitration agreement existed.

**B. Illusory Contract**

At oral argument, Lam's counsel asserted for the first time that the employee handbook signed by his client, in which the arbitration agreement was located, was illusory and therefore unenforceable in its entirety. This argument is based on the fact that the handbook specifically reserves to the employer the power to modify most of the policies governing Lam's employment. The argument fails under Washington law.

The seminal case of Thompson v. St. Regis Paper Co., 102 Wn.2d 219 (1984), disposes of the illusory contract argument. When an employee is hired for an indefinite period without the benefit of a written employment contract, the employer obligates itself to pay the employee for any work performed, but retains the right to control the working relationship through its policies. Unilateral changes to the employment policies are binding: the employee can either accept those changes, quit, or be fired. If an employer chooses to issue an employee handbook or policy manual, however, it "may create an atmosphere where employees *justifiably*

*rely* on the expressed policies and, thus, justifiably expect that the employers will do the same." Thompson, 102 Wn.2d at 230 (emphasis in original). If an employer hopes to retain unilateral control over the working relationship, it must make clear that the employee should not rely on the policies as stated: the employer "can specifically state in a conspicuous manner" that the manual is simply a general statement of company policy and is not intended to be part of the employment relationship or it "may specifically reserve a right to modify those policies or write them in a manner that retains discretion to the employer." Id. at 230-31. The Court ultimately reviews the handbook or policy manual to determine whether it "creates an atmosphere of job security and fair treatment with promises *of specific treatment in specific situations*" such that an employee would be induced to remain on the job and not actively seek other employment based on those promises. Id. at 230. If the employee could fairly rely on the expressed policies, the policies become enforceable components of the employment relationship. If they are merely statements of company policy or contain a clear reservation of rights as described above, the policies are not enforceable. Id.

The arbitration agreement is a written contract, separate and distinct from the handbook in which it is contained. If signed, there would be nothing illusory about its terms: both parties could be compelled to arbitrate a dispute as set forth in the agreement. Nor would Fry's attempt to retain the power to modify their policies and procedures make the arbitration agreement illusory. The mere declaration that the employer is retaining control of the working relationship is not dispositive. The Court evaluates the nature of the policies and their likely effect on the employee to determine whether a binding contract exists or whether the retention of control is effective. In this case, the promise to arbitrate is clearly a promise of specific treatment in specific situations on which the employee would reasonably rely: the employer would therefore be bound by its statement and may not unilaterally alter the arbitration policy. Thus, the agreement, whether entered into separately or as part of the employee handbook, is not illusory and would be enforceable.

**C. Waiver**[2]

A validly executed and otherwise enforceable arbitration agreement can be waived if (1) the employer has knowledge of an existing right to compel arbitration, (2) the employer acts in a manner that is inconsistent with the right to compel arbitration, and (3) prejudice would arise if arbitration were subsequently compelled. See Adler v. Fred Lind Manor, 153 Wn.2d 331, 362 (2005); United Computer Sys., Inc. v. AT&T Corp., 298 F.3d 756, 765 (9th Cir. 2002). "Courts must indulge every presumption in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Verbeek Props., LLC v. GreenCo Envtl., Inc., __ Wn. App. __, 2010 WL 5141280 at * 2 (Dec. 20, 2010). The party opposing arbitration has the burden of showing that a waiver has occurred. Otis Housing Ass'n v. Ha, 165 Wn.2d 582, 587 (2009).

Defendant has a policy of requiring all employees to sign an agreement to arbitrate disputes as a condition of employment. Decl. of Lisa Souza (Dkt. # 10) at ¶ 4. Defendant therefore knew (or should have known) that it had a right to compel arbitration of Lam's Title VII claim as soon as it was asserted. Lam has not, however, shown inconsistent acts or prejudice arising therefrom. This action was filed by the Equal Employment Opportunity Commission ("EEOC") on September 29, 2010. That was the first time the dispute at issue in this litigation (*i.e.*, whether defendant violated Title VII) was joined. Defendant was not required to, nor could it, demand arbitration in response to the EEOC's filing of the complaint in this action or its three-year investigation of Lam's claims. The EEOC is not a party to the arbitration agreement and therefore could not be compelled to arbitrate under the FAA. Equal Emp't Opportunity

---

[2] Under the FAA, the Court's tasks are limited to (a) determining whether a valid agreement to arbitrate exists and (b) deciding whether a particular dispute falls within the scope of the agreement. United Steelworkers of Am. v. Warrior & Gulf, 363 U.S. 574, 582-83 (1960). Although waiver is not a challenge to the validity of the agreement (but rather its enforceability), the Ninth Circuit has determined that "particular contractual defenses to enforcement of the arbitration clause," such as breach and waiver, are properly decided by the district court. Cox, 553 F.3d at 1120.

Comm'n v. Waffle House, Inc., 534 U.S. 279, 288, 289 (2002).[3] Lam did not seek to intervene in the EEOC's action until November 4, 2010, and one could reasonably argue that the right to compel arbitration did not exist until he was granted leave to become a party to this lawsuit, thereby asserting a claim to which the arbitration agreement might apply. Defendant did not wait that long: as soon as Lam raised the possibility of asserting a Title VII claim, defendant demanded arbitration. Because defendant promptly sought arbitration of Lam's Title VII claim, its actions are entirely consistent with an intent to arbitrate, and no prejudice has arisen.

Lam argues that defendant waived its contractual right to arbitrate when it failed to seek arbitration of plaintiff's Washington Law Against Discrimination ("WLAD") claim. Lam filed his WLAD claim on May 21, 2010, in King County Superior Court.[4] He assumes, without providing any supporting authority, that the failure to seek arbitration of one claim acts as a waiver for all other claims arising out of the same event or occurrence. This does not appear to be the law in Washington. The issue is whether defendant has exhibited "conduct inconsistent with any other intention but to forego a known right." Lake Wash. Sch. Dist. No. 414 v. Mobile Modules Nw., Inc., 28 Wn. App. 59, 62 (1980). Even if defendant's failure to seek arbitration of the WLAD manifests an intent to forego the right to arbitrate that claim, this litigation raises a separate issue that will not be presented to the state court, namely whether defendant's conduct violated Title VII. Although the separation of these two claims is inefficient and will create significant redundancies, the state court will not find facts or make conclusions of law pertaining to the Title VII claim defendant now seeks to arbitrate. In such circumstances, the failure to

---

[3] In addition, courts generally find that informal complaints, settlement negotiations, and EEOC investigations do not trigger a duty to demand arbitration under the theory that parties should be able to pursue extra-judicial resolution of their dispute without waiving their contractual right to arbitrate. See Martin Mariettta Aluminum, Inc. v. Gen. Elec. Co., 586 F.2d 143, 147 (9th Cir. 1978); Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 15-16 (1st Cir. 2005); Adler, 153 Wn.2d at 362.

[4] Plaintiff filed his WLAD claim because the statute of limitation was about to expire. At the time, the EEOC had not yet determined whether it would pursue a Title VII claim, and Lam was therefore precluded from filing his Title VII and WLAD claims together.

compel arbitration regarding the WLAD claim was not a clear election to litigate the Title VII claim. See Verbeek Props., 2010 WL 5141280 at * 4-5.

Even if defendant's conduct with regards to the WLAD claim is considered in the waiver analysis, the six month delay in seeking to compel arbitration does not reflect a voluntary and intentional relinquishment of the right to arbitrate. Defendant filed an answer to plaintiff's WLAD claim on June 21, 2010, but did not demand arbitration in that pleading.[5] Both sides served and responded to written discovery requests. In response to a request seeking copies of all employment contracts between Lam and defendant, defendant identified the arbitration agreement. Decl. of Scott C. G. Blankenship (Dkt. # 8), Ex. H at 24. Thus, by the end of September 2010, approximately four months after the WLAD claim was filed, plaintiff was on notice that defendant believed the dispute was subject to arbitration. When Lam sought to intervene in the EEOC's Title VII action, defendant moved to compel arbitration in both the state and federal proceedings.

A contractual right to arbitration may be waived if not timely invoked. Otis Housing, 165 Wn.2d at 587. The question, then, is whether defendant's demand for arbitration was timely in the circumstances. A survey of the cases in which Washington courts have found a waiver suggests that a more significant delay and/or a more active litigation strategy than that

---

[5] The import of this omission is hard to determine. Lam has not identified, and the Court has not found, any decision in which the failure to raise arbitration as an affirmative defense, standing alone, is deemed a waiver of a contractual right to arbitrate. While the presence or absence of an "arbitration" defense is often considered when determining whether a party's conduct is consistent with an intention to arbitrate, it is not dispositive.

More fundamentally, there is reason to doubt whether Rule 8's reference to "arbitration" was ever intended to encompass demands for future arbitration. Affirmative defenses, if proven, allow defendant to avoid or reduce the liabilities asserted in the complaint. A demand for arbitration, on the other hand, is simply a demand for a different forum. Because arbitration does not alter the substantive rights of the parties, it is not a means of avoiding, reducing, or limiting liability. At common law, the defense of "arbitration and award" was used not as a method for asserting a right to arbitration, but as a means of bringing to the court's attention the prior resolution of the dispute by a third-party, extra-judicial tribunal.

which occurred here is necessary to constitute a waiver. See, e.g., Pedersen v. Klinkert, 56 Wn.2d 313, 320 (1960) (arbitration agreement waived when raised for the first time after judgment was entered); Ives v. Ramsden, 142 Wn. App. 369, 382-83 (2008) (arbitration agreement waived where defendant waited three years and four months until the eve of trial to raise the issue). Courts are most likely to find waiver when a litigant has affirmatively sought a judicial determination of the issue and then decided that arbitration might be the better forum. See Otis Housing, 165 Wn.2d at 588 (waiver found where plaintiff had unsuccessfully litigated the issue of whether an option had been properly exercised before seeking arbitration); Harting v. Barton, 101 Wn. App. 954, 962 (2000) (defendant who sought summary judgment and unsuccessfully litigated the action through trial waived non-judicial forum). Nothing of the sort has occurred here. At the time it sought to enforce the arbitration agreement, defendant had not requested any affirmative relief from either court, nor had it obtained any adverse rulings. Defendant raised the arbitration agreement in response to plaintiff's discovery requests within a few months of the filing of the state action. While it is possible that the initial delay in raising the arbitration agreement reflected a knowing and intentional waiver of the agreement, that is not the only, or even the most likely, explanation given the nature of corporate litigation, the EEOC's significant involvement in this matter, and the overlapping proceedings. In such circumstances, the Court finds that Lam has failed to show conduct inconsistent with an intent to arbitrate. See B&D Leasing Co. v. Ager, 50 Wn. App. 299, 303-04 (1988) (despite nine month delay in seeking arbitration, "appellants' conduct was not consistent only with a waiver of the right to arbitration, and therefore no waiver occurred.")[6]

---

[6] In his motion, Lam also argues that defendant's request for arbitration is untimely pursuant to Section II of the arbitration agreement. As noted above, the Court's tasks are limited to (a) determining whether a valid agreement to arbitrate exists and (b) deciding whether a particular dispute falls within the scope of the agreement. United Steelworkers, 363 U.S. at 582-83. The agreement at issue here applies to all disputes "arising from or in any way related to" Lam's employment with Fry's Electronics. Given the breadth of the agreement and the Supreme Court's instruction that any doubts regarding the scope of the arbitration clause should be resolved in favor of arbitration (Id. at 582-83), the Court finds

Finally, Lam has failed to show that he would suffer prejudice if arbitration were compelled. Lam argues that he has incurred substantial costs and attorney's fees associated with discovery in the state court action. As noted above, the discovery conducted in state court is in its preliminary stages, and Lam has not yet asserted any claims in the federal proceeding. Neither court has resolved any of the issues raised in the pending actions. Contrary to Lam's unspoken assumptions, his discovery efforts would not be wasted if arbitration were compelled, nor would there be unnecessary duplication of effort. Any documents and information that have already been obtained can be used in arbitration. Moreover, the arbitrator has the authority to allow discovery as necessary, including the types of written discovery pursued in the state proceeding. Lam would not be prejudiced if the contractual arbitration provision were enforced at this point in the litigation.

**D. Allegation of Forgery**

Lam asserts that he never saw the August 25, 2003, arbitration agreement before it was filed by defendant in this litigation, that he did not sign the agreement, and that the signature on the document "does not look like mine." Decl. of Ka Lam (Dkt. # 14) at ¶¶ 4-5. Lam hypothesizes that the "arbitration agreements were created by Fry's after the state court litigation began." Id. at ¶ 6. Defendant, on the other hand, states that the arbitration agreement is signed by all employees, that Lam acknowledged receipt of the employee handbook of which the agreement was a part, and that the signature on the August 25th agreement is very similar to other signatures that Lam does not deny are his.[7]

---

that the interpretation and application of the contractual limitations period is a procedural question for the arbitrator to decided. See Cox, 533 F.3d 1114, 1120-21 (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002)).

[7] Defendant argues that whether Lam signed the August 25, 2003, arbitration agreement is a red herring because his signature on the "Acknowledgment of Receipt of Handbook by Associate" constitutes binding assent to the terms of the arbitration agreement. The Ninth Circuit has held, however, that signing an acknowledgment of receipt is not a knowing agreement to arbitrate unless the

Where there is conflicting evidence regarding one party's assent to the arbitration agreement, the parties will not be forced to arbitrate unless and until it is finally determined that a binding agreement was formed. See Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc., 925 F.2d 1136, 1140-41 (9th Cir. 1991); Brooks v. Robert Larson Auto. Group, Inc., 2009 WL 2853452 at *3 (W.D. Wash. Sept. 1, 2009). Pursuant to 9 U.S.C. § 4, the Court shall proceed summarily to a trial on the question of forgery. Lam and Fry's shall have sixty days in which to conduct discovery related to this issue and to file dispositive motions. If the matter is not resolved on motion practice, the Court will schedule a one day trial to determine whether the signature on the August 25, 2003, agreement is a forgery.

The implications of this dispute are serious. The parties should carefully consider the impact of their litigation strategy at this point. If the evidence shows that a party has lied to the Court or engaged in fraudulent practices, the Court will not hesitate to impose terms and/or sanctions on the unsuccessful party at the conclusion of the summary trial.

**E. Denial of Substantive Rights**

Lam argues that an order compelling arbitration in the context of this case will destroy his ability to pursue a Title VII claim, thereby depriving him of his substantive rights under the statute. As a general matter, enforcement of an arbitration agreement does not contravene the substantive rights afforded by Title VII because only the forum, not the protections against workplace discrimination, are altered. See 14 Penn Plaza LLC, Pyett, __ U.S. __, 129 S. Ct. 1456, 1469-70 (2009). Lam's argument appears to be based on the fact that, once the EEOC files suit in its own name, the employee has only two choices: he may intervene in the EEOC's suit or he may watch from the sidelines. Equal Emp't Opportunity Comm'n v.

---

acknowledgment specifically notifies the employee (a) that the handbook contains an arbitration clause or (b) that by signing the acknowledgment, the employee is waiving the right to a judicial forum. Kummetz v. Tech Mold, Inc., 152 F.3d 1153, 1155 (9th Cir. 1998). The acknowledgment signed by Lam does not mention the arbitration agreement or its effect. Under the Kummetz analysis, his signature on that document does not constitute knowing agreement to the arbitration provision.

Waffle House, Inc., 534 U.S. 279, 291 (2002). Nothing about this process or the exclusivity of the EEOC's control over the claim suggests that the EEOC's decision to file suit abrogates or otherwise immunizes the employee from an existing agreement to arbitrate. An employee may, as Lam has done in this case, seek to intervene in the EEOC's case, at which point the employer may seek to enforce the agreement to arbitrate as to the intervenor. The Supreme Court specifically addressed this situation and noted that, although the agreement to arbitrate cannot be enforced against the EEOC, the employee can be compelled to arbitrate pursuant to the agreement of the parties. Id. at 294 n.9.

For all of the foregoing reasons, Lam's motion to intervene (Dkt. # 7) is GRANTED. Lam shall file and serve his complaint within fourteen days of the date of this Order. The cross-motions regarding the arbitration agreement (Dkt. # 7 and Dkt. # 9) are DENIED. Lam and Fry's have sixty days from the date of this Order in which to conduct discovery related to the validity of the signature on the August 25, 2003, agreement and to file dispositive motions on that issue. Lam's "Motion to Supplement the Record" (Dkt. # 38) is GRANTED, but the Court does not find the submission persuasive.

Dated this 14th day of February, 2011.

Robert S. Lasnik
United States District Judge