THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, *et al.*,<br><br>            Plaintiffs,<br><br>   v.<br><br>FRY'S ELECTRONICS, INC.,<br><br>            Defendant. | No. CV 10-1562 RSL<br><br>PLAINTIFFS' MOTION FOR SANCTIONS FOR DEFENDANT'S WILLFUL SPOLIATION OF EVIDENCE AND FAILURE TO APPEAR FOR DEPOSITION<br><br>NOTE FOR MOTION CALENDAR: March 9, 2012<br><br>**ORAL ARGUMENT REQUESTED** |

THE BLANKENSHIP LAW FIRM, P.S.
1201 Third Avenue, Suite 2880
Seattle, Washington 98101
(206) 343-2700

# I. INTRODUCTION

Defendant Fry's Electronics, Inc. destroyed key evidence after it anticipated litigation. Indeed, Defendant has admitted that it destroyed evidence. This evidence directly relates to the reasons it supposedly terminated Plaintiffs: job and sales performance, Motivation Operation Personnel Audit Reviews ("MOPARs") (relating to performance), the "A Team," (an elite group of employees selected to open new stores, and hire and train employees). Disturbingly, in 2009 Fry's "replaced" hard drives on two store computers (containing performance, harassment, and electronic documents relating to their complaints) long after firing Mr. Lam and after the EEOC had found violations of Title VII. Fry's also failed to preserve performance reviews, text messages that contained proof of sexual harassment, and sexual harassment investigation records relating to these claims. This evidence is integral to proving Plaintiffs' claims, good performance, and for refuting Defendant's false reasons for firing Mr. Lam and Ms. Rios. Highly relevant evidence existed that relates to the supposed reasons for firing Plaintiffs, yet it was not preserved.

Moreover, Defendant failed to appear at Plaintiffs' properly noticed 30(b)(6) deposition and the deposition of Randy Fry (who Fry's claims receives discrimination complaints), cancelling on the business day before they were scheduled and a day before the discovery cutoff. These depositions were noted, in part, to obtain information on Defendant's inadequate preservation policies, its failure to preserve relevant evidence, and Plaintiffs' damages. Plaintiffs had begun preparing for them, gathering documents, purchasing plane tickets, and booked lodging. Defendant's last minute cancelation prejudiced Plaintiffs' by preventing questioning of Fry's on these issues.

Given this document destruction, Defendant's answer and defenses should be stricken and default judgment should be entered in favor of Plaintiffs.[1] Moreover, Defendant's failure to appear violates of Fed.R.Civ.P. 37(d)(1)(A)(i) and constitutes contempt, and thus Plaintiffs

---

[1] Defendant failed to answer Plaintiff-Intervenor Ka Lam's separate complaint, which was filed on February 15, 2011. *Dkt*. 46. Plaintiffs are requesting the Court to strike Defendant's answer, but in the case of Mr. Lam's Complaint, Mr. Lam requests the Court simply preclude Defendant from answering and enter default judgment on his claims.

PLAINTIFFS' MOTION FOR SANCTIONS FOR DEFENDANT'S
WILLFUL SPOLIATION OF EVIDENCE AND FAILURE TO
APPEAR FOR DEPOSITION (Cause No. CV 10-1562 RSL)
Page 1

**THE BLANKENSHIP LAW FIRM, P.S.**
1201 Third Avenue, Suite 2880
Seattle, Washington 98101
(206) 343-2700

request this Court order sanctions under Fed.R.Civ.P. 37(b)(2)(A)(i)-(iv), including awarding fees and costs associated with this motion.

## II. FACTUAL BACKGROUND

**A.      Defendant Anticipated Litigation in May 2007.**

Defendant Fry's terminated Plaintiff-Intervenor Ka Lam in May 2007, just weeks after Fry's Store Manager Art Squires learned that Mr. Lam had complained to Fry's corporate about the sexual harassment of one of his associates, Plaintiff America Rios. *Exhs. A, C.* Ms. Rios also complained to Mr. Lam and other Managers and Directors at Fry's, including Executive Vice President Kathy Kolder, that she was being sexually harassed by Assistant Store Manager Minasse Ibrahim. *Exh. G.* After seeing sexually harassing text messages Ibrahim had sent to Ms. Rios, Mr. Lam called Director of Enterprise Risk Management Lisa Souza at Fry's corporate headquarters and complained on her behalf. *Exh. C.*

Vice President Kolder informed Store Manager Squires of Mr. Lam's sexual harassment complaints while both Kolder and Squires were at Fry's May 2007 quarterly meeting.[2] *Kolder Dep.* at 22:3-23:6 (*Exh. P*). Mr. Lam complained to Fry's corporate rather than Squires because he knew that Squires and Ibrahim were close personal friends, and feared retaliation. Mr. Lam's fears proved well founded. When Squires returned to the Renton store, he immediately retaliated against Lam. *Exh. C.* Rather than address Mr. Lam's concerns over sexual harassment, Squires threatened Mr. Lam's job, suggesting for the first time that Mr. Lam's had alleged performance issues. *Exh. C.*

Approximately two weeks later, Squires called Mr. Lam into his office, falsely accused him of various performance issues, falsely accused *Mr. Lam* of sexually harassing

---

[2] Assistant Store Manager Ibrahim also attended this quarterly meeting and was actually roommates with Squires while both were in San Jose. *Ibrahim Dep* at 83:9-24 (*Exh. R*).. Ibrahim and Squires were close personal friend who spent a considerable amount of time socializing outside of work. The two golfed and played basketball together, played poker together, lived in the same neighborhood, and even visited the hospital when each other's children were born. *Ibrahim Dep.* at 79:19-80:22, 188:9-189:14 (*Exh. R*).

**THE BLANKENSHIP LAW FIRM, P.S.**
1201 Third Avenue, Suite 2880
Seattle, Washington  98101
(206) 343-2700

Ms. Rios, and fired him. *Exh. A.*  None of the alleged performance issues were previously documented despite Fry's 5 Step progressive discipline policy. *Squires Dep.* at 101:24-102:20 (*Exh. S*); *Exh. Z.* Audio/Video Department Manager Duc Le, who was present at Mr. Lam's termination meeting, testified that the last thing Mr. Lam said to both Squires and Le before he left the meeting was "EEOC," indicating that he intended to pursue litigation. *Le Dep.* at 227:22-230:12 (*Exh. Q*). Despite knowing Mr. Lam complained about sexual harassment, Kolder approved Mr. Lam's unlawful termination without ever speaking to Lam. *Exh. C.* Fry's duty to preserve evidence relating to Mr. Lam's termination and Ms. Rios' allegation of sexual harassment was triggered at Lam's termination on May 24, 2007.

In early October 2007, Mr. Lam commenced litigation by filing a charge with the EEOC, alleging that Fry's retaliatorily fired him for reporting that Assistant Manager Ibrahim had sexually harassed Ms. Rios. *Exh. D.* Fry's received notice of the charge on October 15, 2007 when the EEOC sent it a "Notice of Charge of Discrimination" and asked that Fry's respond by October 29, 2007. *Id.* The notice specifically informed Fry's to preserve records relevant to the charge. *Id.* Fry's own document retention policy clearly states that "[i]f you believe, or the Company informs you, that Company records are relevant to litigation, *or potential litigation*, then you must preserve those records." *Exh. W.* Once Mr. Lam filed a charge, litigation had actually begun. Fry's had a duty to preserve all potentially relevant evidence relating to Mr. Lam's claims and Ms. Rios' allegations, and termination.

**B.     Fry's Retaliatorily Terminates Ms. Rios February 14, 2008 and Its Duty to Preserve Evidence Continues**

Fry's fired Ms. Rios in February 2008 after she had complained to several Fry's managers and directors, including V.P. Kolder about the ongoing sexual harassment she suffered at the hands of Assistant Manager Ibrahim. *Exhs. F, G.* Fry's pretextual reason for unlawfully terminating Ms. Rios was poor sales performance, yet Fry's has failed to preserve any documentation which would allow Plaintiffs to evaluate Fry's claims. *Id.* Indeed, Fry's admits that it destroyed sales information for at least 2006 through 2008 which would enable

THE BLANKENSHIP LAW FIRM, P.S.
1201 Third Avenue, Suite 2880
Seattle, Washington  98101
(206) 343-2700

Plaintiffs to compare Ms. Rios' sales with other employees in her department. *Dkt*. 121; *Exh. K.*

Fry's mistreatment of Ms. Rios and its eventual retaliatory termination of her was closely related to Mr. Lam's claims. By February 2008, Fry's had already responded to the EEOC charge Mr. Lam filed and was well aware that anything relating to Mr. Lam or Ms. Rios' employment involved actual litigation, an administrative action. Evidence of alleged performance issues, or information potentially related to these claims should have preserved. Despite the charge and findings by the EEOC, Fry's went ahead and failed to preserve evidence.

**C.    Fry's Destroyed Key Evidence Related to Plaintiffs' Sales Performance and its Pretextual Reasons For Terminating Plaintiffs Lam and Rios**

Despite Mr. Lam's unlawful termination and his filed EEOC charge, Fry's has admitted in answers and responses to interrogatories and pleadings before this Court that it destroyed evidence. *Dkt*. 121 at 14; *Exh. O* at 13-14, 17-18. The evidence Fry's admits it destroyed relates to Plaintiffs' claims and Fry's defenses and was destroyed well after litigation was anticipated in May 2007. Strikingly, in opposition briefing currently pending before this Court Defendant actually admitted that it destroyed sales information from the Audio/Video department from 2006-2008 (Plaintiffs Lam and Rios both worked in the A/V department) and stating that there is no longer a "yardstick" to evaluate Mr. Lam's or Ms. Rios' sales performance, *Dkt*. 121 at 8-9. Fry's destroyed this evidence despite the fact that it specifically alleged that it fired Mr. Lam, in part, for poor sales performance when responding to Mr. Lam's EEOC charge on December 3, 2007. *Exh. E* at 3-4. Fry's stated to the EEOC that "Due to Mr. Lam's repeated excessive tardiness, his decrease in sales performance … Mr. Lam was issued a 5-Day Notice of Suspension on May 24, 2007" and "[i]n connection with the suspension, an Involuntary Termination Request was sent to the Company's Home Office." *Id.* When the EEOC responded by requesting evidence of poor sales performance, Fry's shifted its pretext, arguing that sales numbers from the Audio/Video department were

PLAINTIFFS' MOTION FOR SANCTIONS FOR DEFENDANT'S
WILLFUL SPOLIATION OF EVIDENCE AND FAILURE TO
APPEAR FOR DEPOSITION (Cause No. CV 10-1562 RSL)
Page 4

THE BLANKENSHIP LAW FIRM, P.S.
1201 Third Avenue, Suite 2880
Seattle, Washington  98101
(206) 343-2700

now "irrelevant" because it now suddenly claimed that Mr. Lam was not in fact fired for poor sales.[3] *Exh. H* at 3. In other words, once the EEOC asked to see proof that Mr. Lam's performance was indeed declining, Fry's shifted its pretext to avoid producing sales records and then apparently failed to preserve them.

In addition, it is clear from Fry's own statements that it knew A/V sales figures were highly relevant to Mr. Lam's claims even while its pretext for his termination was shifting. In fact, Fry's attempted to use (unsubstantiated) sales figures to discredit Mr. Lam in one of its responses to the EEOC investigation. For example, Fry's wrote to the EEOC:

> **To evaluate a supervisor's sales performance, it is mandatory to consider the sales of the entire department for which he is responsible.** As the only Audio Sales supervisor in Fry's Renton store, Mr. Lam was directly responsible for the overall sales performance of all Audio Sales. To the extent the sales performance of the Audio Sales Department is relevant, for the period starting January 1, 2007 up to and including Mr. Lam's termination, the Department averaged 83.93% of its sales projection. For the period following Mr. Lam's departure from June 2007 through January 2008, the Department's sales performance improved dramatically, averaging 100.34% of its sales projection. Thus the sales numbers demonstrate that Audio Sales improved by approximately 20% in the months following Mr. Lam's termination, supporting the position that the Audio Department had significant room for sales improvement while under Mr. Lam's supervision. *Exh. H* at 3-4.

Thus, incredibly, in one breath Fry's claimed that evidence relating to Mr. Lam's sales performance was irrelevant and then in the next breath used those sales numbers to justify his "poor performance." Fry's destroyed this crucial evidence, including the documents required to disprove their false claims. Indeed, Fry's destroyed all the metrics that would enable such a review well after litigation was anticipated. Considering Fry's response to the EEOC claiming it had sales information that supported its position, and its current admission that this same information no longer exists, the only logical conclusion is that Fry's intentionally destroyed these records (which should reflect excellent sales and performance) in order to prohibit Mr. Lam from prosecuting his claims and refuting Fry's bogus reasons for his termination.

---

[3] Fry's also claimed for the first time in its response to the EEOC that Mr. Lam was also terminated for tardiness although there is no mention of tardiness on any of the termination and disciplinary paperwork Fry's created when it unlawfully retaliated against and terminated Mr. Lam.

PLAINTIFFS' MOTION FOR SANCTIONS FOR DEFENDANT'S
WILLFUL SPOLIATION OF EVIDENCE AND FAILURE TO
APPEAR FOR DEPOSITION (Cause No. CV 10-1562 RSL)
Page 5

THE BLANKENSHIP LAW FIRM, P.S.
1201 Third Avenue, Suite 2880
Seattle, Washington 98101
(206) 343-2700

1   Moreover, there is no dispute that Fry's claims it terminated Ms. Rios for poor sales

2   performance. However, like the information relating to Mr. Lam's performance from 2006-

3   2007, Fry's destroyed sales records from 2008 as well, the year it terminated Ms. Rios.[4]

4   Again, Fry's destroyed these records despite an ongoing Federal investigation into the

5   termination of Lam and Rios. As Fry's has the only records that would allow Plaintiffs to

6   measure Ms. Rios' sales, the evidence Fry's destroyed will severely prejudice her case.

7   **D.     Fry's Destroyed MOPARs For the Renton Fry's A/V Department**

8           Fry's also destroyed MOPARs (formal reviews of every department in the store) for

9   the A/V Department despite its claims that Mr. Lam was terminated for a decline in job

10  performance and that as a Supervisor his "main responsibility is to ensure that his department

11  runs smoothly." *Exh. H* at 3. These records were highly relevant to Mr. Lam's claims, which

12  Fry's knew when they destroyed them. Indeed, Todd Smith, Store Merchandising &

13  Operations District Manager for District 1 at Fry's (which includes the Renton store) signed a

14  sworn declaration stating that a "MOPAR is a formal review of a store's department," which

15  is "recorded and scored on a MOPAR form." *Exh. M*. According to Smith, "[e]ach department

16  has a separate MOPAR form devised and particularized to that department." *Id.* at ¶4. If Mr.

17  Lam's main responsibility as a Supervisor was supposedly to ensure his department was

18  running smoothly, MOPARs from at least the A/V department are critical for evaluating his

19  performance. Any MOPARs from the A/V department in the Renton Fry's store conducted

20  during the time Mr. Lam was a Supervisor of that department would reflect the departments

21  performance and, as an extension, Mr. Lam's performance. This information could not be

22  more relevant. Nevertheless, Fry's destroyed all MOPARs relating to Mr. Lam's employment.

23  *Dkts.* 121-125; *Exhs. K-N.* Thus, this destruction of evidence denies Mr. Lam of proof of his

24  strong job and sales performance and the metrics to dispose of Fry's false claims that Mr.

25  Lam's sales and job performance were poor. Again, this evidence is critical.

26  _____

[4] If Ms. Rios' sales numbers were as Fry's claims they were, clearly records from 2006 and 2007 would also be highly relevant for her claims against Fry's.

PLAINTIFFS' MOTION FOR SANCTIONS FOR DEFENDANT'S
WILLFUL SPOLIATION OF EVIDENCE AND FAILURE TO
APPEAR FOR DEPOSITION (Cause No. CV 10-1562 RSL)
Page 6

THE BLANKENSHIP LAW FIRM, P.S.
1201 Third Avenue, Suite 2880
Seattle, Washington  98101
(206) 343-2700

**E.     Fry's Replaced Computer Hard Drives in 2009**

Despite Mr. Lam's pending charge and the EEOC investigation, Store Manager Squires has signed a sworn declaration stating that Fry's replaced the hard drives of two computers located in the Renton store manager's office in 2009 which were used to "create documents concerning associate (employee) discipline, termination and *complaints of harassment, discrimination or retaliation*." *Exh. L* at ¶3. Disturbingly, it appears that the replacement of the old hard drives – which would contain highly relevant electronically stored information (ESI) – occurred in 2009 after the EEOC found violations of Title VII and likely after it had reopened its investigation. *Exhs. I-J.* Thus, Fry's destroyed hard drives during this critical period when the EEOC was seeking additional information. At best, Fry's failed to preserve relevant evidence and comply with its duties under the civil rules despite a pending charge and investigation by the EEOC. What seems more likely is that Fry's intentionally destroyed highly relevant evidence in the face of anticipated litigation in order to protect itself from liability.

**F.     Fry's Destroyed Evidence Related to Lam's and Rios' Strong Job Performance**

Fry's also failed to preserve lists of employees selected to the "A Team." *Exh. O* at 18. The "A-Team," is a group of select employees chosen to help open new Fry's stores, and to hire and train new employees for them. *Squires Dep.* at 132:11-24; 180:15-19 (*Exh. S*). According to Duc Le, the "A-team is [where] we send our best associates to open a store." *Le Dep.* at 232:17-25 (*Exh. Q*). Mr. Lam and Ms. Rios were selected to two "A Teams" shortly before they complained and, in Mr. Lam's case, just months before his unlawful termination in the case of Mr. Lam. *Id.*; *Le Dep.* at 242:2-7 (*Exh. S*).

By destroying information relating to other A Team selections, Fry's has made it difficult, if not impossible for Plaintiffs to identify other witnesses who might prove to have valuable information relating to these claims. Fry's has destroyed valuable comparator information. This information would further establish that Lam and Rios were top performers.

PLAINTIFFS' MOTION FOR SANCTIONS FOR DEFENDANT'S
WILLFUL SPOLIATION OF EVIDENCE AND FAILURE TO
APPEAR FOR DEPOSITION (Cause No. CV 10-1562 RSL)
Page 7

THE BLANKENSHIP LAW FIRM, P.S.
1201 Third Avenue, Suite 2880
Seattle, Washington 98101
(206) 343-2700

1

2

**G.      Fry's Failed to Preserve Performance Reviews, Text Messages, and Investigation Materials**

Fry's failed to produce other highly relevant evidence that should exist, and was likely destroyed, including performance reviews, text messages, and investigation materials. For example, Fry's claims that Store Manager Squires did a complete and thorough investigation of Mr. Lam's and Ms. Rios' complaints of sexual harassment, yet has failed to produce any documentation of this supposed investigation except for three self-serving statements, one of which was taken from the accused harasser Ibrahim, all of which were prepared on computers whose hard-drives have been "replaced."  *Exh. E* at 4; *Exh. L* at ¶3*; Blankenship Decl*. Fry's also failed to request and preserve text messages from Ibrahim to Ms. Rios that Ibrahim testified existed on his phone. *Ibrahim Dep*. at 221:9-225:5 (*Exh. R*). This is information that should have been preserved and produced.

Moreover, Assistant Manager Ibrahim testified that supervisors and managers were given annual reviews in order to give them feedback on their performance. *Ibrahim Dep*. at 268:12-272:7 (*Exh. R*). Ibrahim testified that Fry's had annual reviews with its supervisors and managers (which include Mr. Lam) and reviewed any issues with them. *Id*. Ibrahim testified that a copy of these reviews "stays at the store, and they [Fry's corporate] take a copy." *Id.* Yet, as with other key documents, Fry's has not produced these reviews despite discovery requests and has not stated what happened to them. *Blankenship Decl*. Fry's has completely failed in its obligation to preserve highly relevant evidence, and has likely destroyed it.

**H.      Fry's Cancelled Properly Noticed Depositions One Day Before They are Scheduled to Take Place**

In part due to Defendant's admissions that it had not preserved evidence in this case, Plaintiffs noted a 30(b)(6) deposition for February 6, 2012 providing timely notice to Defendant. *Blankenship Decl., Exh. U*. Similarly, Plaintiffs sought to depose co-founder of Fry's, Randy Fry on the same day (who Defendant contend receives discrimination

PLAINTIFFS' MOTION FOR SANCTIONS FOR DEFENDANT'S WILLFUL SPOLIATION OF EVIDENCE AND FAILURE TO APPEAR FOR DEPOSITION (Cause No. CV 10-1562 RSL) Page 8

THE BLANKENSHIP LAW FIRM, P.S.
1201 Third Avenue, Suite 2880
Seattle, Washington  98101
(206) 343-2700

complaints with a "Tell Randy" form). *Blankenship Decl., Exh. T.*; *Squires Dep.* at 115:7-10 (*Exh. S*); *Kolder Dep.* at 198:23-199:21 (*Exh. P*). Defendant had noted three depositions the week before – which it cancelled at the last minute – making February 6 the only day Plaintiffs could schedule these important depositions. *Blankenship Decl*. Plaintiffs provided Defendant with over ten days of notice and set them in San Jose, California. *Blankenship Decl.*

Nevertheless, on Friday February 3, 2012 – less than one business day before the depositions were scheduled – Defendant informed Plaintiffs for the first time they would not produce witnesses for these depositions voicing various objections. *Blankenship Decl., Exh. V*. Defendant failed to move for a protective order and gave no objection until one business day before the depositions were scheduled. *Id*. It allowed Plaintiff to spend days preparing for these important depositions without objection, and cancelled at the last minute knowing that there were no more days within the discovery cutoff to re-note them. *Blankenship Decl*. Defendant's attempt to preclude Plaintiffs from conducting depositions, especially the 30(b)(6) of Fry's as a corporate defendant, has severely prejudiced Plaintiffs. Defendant should be sanctioned and Plaintiffs should be granted leave to conduct them after the discovery cutoff.

### III. ANALYSIS

Spoliation is defined as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Tennison v. City and County of San Francisco*, 2006 WL 733470, * 38 (N.D.Cal.2006) (citing *Byrni v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107 (2nd Cir.2001)). The loss or destruction of evidence qualifies as spoliation when the evidence is potentially relevant and the destroying party has notice of its potential relevance. "A party's destruction of evidence qualifies as willful spoliation if the party has some notice that the documents were *potentially* relevant to the litigation before they were destroyed." *Leon v. IDX*

PLAINTIFFS' MOTION FOR SANCTIONS FOR DEFENDANT'S
WILLFUL SPOLIATION OF EVIDENCE AND FAILURE TO
APPEAR FOR DEPOSITION (Cause No. CV 10-1562 RSL)
Page 9

**THE BLANKENSHIP LAW FIRM, P.S.**
1201 Third Avenue, Suite 2880
Seattle, Washington  98101
(206) 343-2700

*Systems Corporation*, 464 F.3d 951, 959 (9th Cir. 2006) (In *Leon* the 9th Circuit held that the trial court did not abuse its discretion by dismissing Leon's claims with prejudice for spoliation of evidence). "Moreover, because 'the relevance of ... [destroyed] documents cannot be clearly ascertained because the documents no longer exist,' a party 'can hardly assert any presumption of irrelevance as to the destroyed documents.'" *Id*. (quoting *Alexander v. Nat'l Farmers Org.,* 687 F.2d 1173, 1205 (8th Cir.1982)). Sanctions for spoliation are appropriate. *Zubulake v.UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003). "Once the duty to preserve attaches, any destruction of documents is, at a minimum, negligent." *Id.*

**A.      Defendant Fry's Destroyed Documents It Knew It Had a Duty To Preserve**

As outlined above, Fry's had a duty to preserve this potentially relevant information as soon as it terminated Mr. Lam in May 2007. "The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation *or when a party should have known that the evidence may be relevant to future litigation*." *Zubulake*, 220 F.R.D. at 216 (emphasis added). "The duty also extends to information that is relevant to the claims or defenses of *any* party, or which is 'relevant to the subject matter involved in the action.'" *Id.* at 218 (quoting Fed.R.Civ.P. 26(b)(1)).

Here, as Duc Le testified, Mr. Lam put Fry's on notice that he intended to file a charge with the EEOC on May 24, 2007 at his termination meeting when his last words were "EEOC." Fry's, who at that time was obviously aware of Mr. Lam and Ms. Rios' complaints, should have anticipated litigation and preserved all relevant information. Moreover, Fry's received actual notice of potential litigation when Mr. Lam filed his EEOC charge in October 2007. *See Zubulake*, 220 F.R.D. at 216 ("In this case, the duty to preserve evidence arose, at the latest, on August 16, 2001, *when Zubulake filed her EEOC charge*."). Thus, there is no question that Fry's knew that it had a duty to preserve relevant information relating to both Mr. Lam and Ms. Rios' employment, performance, complaints, and Fry's pretextual reasons for terminating them.

PLAINTIFFS' MOTION FOR SANCTIONS FOR DEFENDANT'S
WILLFUL SPOLIATION OF EVIDENCE AND FAILURE TO
APPEAR FOR DEPOSITION (Cause No. CV 10-1562 RSL)
Page 10

**THE BLANKENSHIP LAW FIRM, P.S.**
1201 Third Avenue, Suite 2880
Seattle, Washington  98101
(206) 343-2700

**B.     Defendant Fry's Intentionally and Willfully Destroyed Relevant Evidence**

Mr. Lam's and Ms. Rios' job performance was almost entirely based on their ability to sell Fry's merchandise. Yet, Fry's destroyed all sales records and MOPARs which are relevant to proving that Mr. Lam and Ms. Rios were both good performers before their unlawful terminations and to refute Fry's bogus claims that Plaintiffs' performance had deteriorated to such extent as to warrant termination without prior notice. Fry's has failed to produce any documentation demonstrating that Mr. Lam or Ms. Rios received any form of progressive discipline before they were unlawfully and retaliatorily terminated after they complained. Fry's actually recognized that sales records and MOPARs were highly relevant in its 2008 response to the EEOC when it stated that to "evaluate a supervisor's sales performance, it is mandatory to consider the sales of the **entire** department for which it is responsible. As the only Audio Sales supervisor in Fry's Renton store, Fry's claims Mr. Lam was directly responsible for the overall sales performance of all Audio Sales. *Exh. E* at 3.  The documents and records Fry's admitted it destroyed were thus critical to establishing how Mr. Lam was performing and to refute Fry's bogus claim that his performance had suffered to the point of requiring termination.

Importantly, in light of Fry's admission to the EEOC that Mr. Lam's performance was tied to the overall performance of the A/V Department, Fry's destroyed this information intentionally. "A party's destruction of evidence qualifies as willful spoliation if the party has some notice that the documents were *potentially* relevant. *Leon*, 464 F.3d at 959. Here, there is no question that Fry's knew the vast amounts of information, much of it contained in now destroyed MOPARs, sales records, and reviews, was highly relevant to potential litigation.

**C.     Defendant's Answers Should Be Stricken**

"The right to impose sanctions for spoliation arises from a court's inherent power to control the judicial process and litigation." *Pension Committee of University of Montreal Pension Plan v. Banc of America Securities*, 685 F.Supp.2d 456, 465 (S.D.N.Y. 2010). "The

PLAINTIFFS' MOTION FOR SANCTIONS FOR DEFENDANT'S
WILLFUL SPOLIATION OF EVIDENCE AND FAILURE TO
APPEAR FOR DEPOSITION (Cause No. CV 10-1562 RSL)
Page 11

THE BLANKENSHIP LAW FIRM, P.S.
1201 Third Avenue, Suite 2880
Seattle, Washington  98101
(206) 343-2700

determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge and is assessed on a case-by-case basis." *Id.* at 469. Appropriate sanctions should "(1) deter the parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore 'the prejudiced party to the same position [it] would have been in absent the wrongful destruction of evidence by the opposing party.'" *Id.* (quoting *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir.1999).

Dismissal (or in this case striking Defendant's answers and defenses) is the most appropriate sanction where the spoliating party "has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." *Leon*, 464 F.3d at 958. Here, because of the relevance of the evidence Fry's destroyed and their knowledge of its value to Plaintiffs' cases, the only remedy that will redress the prejudice Defendant's wrongful conduct has caused is to strike Defendant's answers. The evidence Fry's destroyed, including sales records, department reviews, electronic evidence from relevant computers, employee lists (for the "A Team"), performance reviews (including Lam and Rios), and potentially other evidence, is key to Plaintiffs' claims and defeating Fry's pretext. Defendant has no way to recreate the information it destroyed and, as it admits, no way to measure Plaintiffs' performance before they were terminated. These facts, along with the severe prejudice to Plaintiffs, warrant striking Defendant's answers and defenses and entering default judgment.[5]

## IV. CONCLUSION

Defendant Fry's intentionally destroyed highly relevant evidence in this case which has caused irreparable harm to Plaintiffs' ability to vindicate their rights and pursue their claims. Considering Fry's previous statements and admissions, its misconduct was intentional and warrants the sanction of striking its answers and defenses. Fry's even failed to produce

---

[5] To the extent this Court does not believe striking Defendant's answers is the appropriate sanction, Plaintiffs request that at a minimum the Court give an adverse inference instruction with regard to all the evidence Defendant has destroyed.

PLAINTIFFS' MOTION FOR SANCTIONS FOR DEFENDANT'S WILLFUL SPOLIATION OF EVIDENCE AND FAILURE TO APPEAR FOR DEPOSITION (Cause No. CV 10-1562 RSL) Page 12

**THE BLANKENSHIP LAW FIRM, P.S.**
1201 Third Avenue, Suite 2880
Seattle, Washington  98101
(206) 343-2700

1   witnesses who could answer questions regarding its destruction of evidence in violation of the

2   Civil Rules. As such, Plaintiffs request that this Court strike Defendant's Answers and award

3   fees and costs to Plaintiffs.  Additionally, Defendant should be ordered attend and testify fully

4   to the 30(b)(6) deposition, and Plaintiff should be granted leave to conduct it after the

5   discovery cutoff.

6

7

8           DATED this 16th day of February, 2012.

9

10

11  THE BLANKENSHIP LAW FIRM, P.S.          EQUAL EMPLOYMENT
                                             OPPORTUNITY COMMISSION
12

13  By: /s/ Scott C. G. Blankenship         By: /s/ Molly B. Powell
        Scott C. G. Blankenship, WSBA No. 21431      Molly B. Powell, WSBA No. 35821
14      Richard E. Goldsworthy, WSBA No. 40684      EEOC
        The Blankenship Law Firm, P.S.           Seattle Field Office
15      1201 Third Avenue, Suite 2880          909 First Avenue, Ste. 400
        Seattle, WA 98101                      Seattle, WA 98104-1061
16      Telephone: (206) 343-2700             Telephone: (206) 220-6892
        Fax: (206) 343-2704                    Fax: (206) 220-6911
17      sblankenship@blankenshiplawfirm.com   molly.powell@eeoc.gov
        rgoldsworthy@blankenshiplawfirm.com
18                                             *Attorneys for Plaintiff EEOC*
19
    *Attorneys for Plaintiffs Ka Lam and America*
20  *Rios*

21

22

23

24

25

26

PLAINTIFFS' MOTION FOR SANCTIONS FOR DEFENDANT'S
WILLFUL SPOLIATION OF EVIDENCE AND FAILURE TO
APPEAR FOR DEPOSITION (Cause No. CV 10-1562 RSL)
Page 13

THE BLANKENSHIP LAW FIRM, P.S.
1201 Third Avenue, Suite 2880
Seattle, Washington  98101
(206) 343-2700

## DECLARATION OF SERVICE

The undersigned hereby declares under penalty of perjury under the laws of the State of Washington that, on the below date, I mailed or caused delivery and/or electronically filed a true copy of this document, which will send notification of such filing, to the following persons:

| | |
|---|---|
| Barry Johnsrud, Esq.<br>Michael A. Griffin, Esq.<br>April Upchurch-Olsen, Esq.<br>Jackson Lewis LLP<br>600 University Street, Suite 2900<br>Seattle, WA  98101<br>Telephone: (206) 405-0404<br>Fax: (206) 405-4450<br>Email:  johnrudb@jacksonlewis.com<br>       griffinm@jacksonlewis.com<br>       olsena@jacksonlewis.com<br><br>*Attorneys for Defendant* | John Stanley, Esq.<br>Molly Powell, Esq.<br>May Che, Esq.<br>EEOC - Seattle District Office<br>909 First Avenue, Suite 400<br>Seattle, Washington 98104<br>Phone: (206) 220-6919<br>Fax: (206) 220-6911<br>E-mail:  john.stanley@eeoc.gov<br>       may.che@eeoc.gov<br>       molly.kucuk@eeoc.gov<br><br>*Attorneys for Plaintiff EEOC* |

DATED this 16th day of February, 2012, at Seattle, Washington.


 /s/ Scott C.G. Blankenship
Scott C. G. Blankenship, WSBA No. 21431
The Blankenship Law Firm, P.S.
1201 Third Avenue, Suite 2880
Seattle, WA 98101
Telephone: (206) 343-2700
Fax: (206) 343-2704
Email:  sblankenship@blankenshiplawfirm.com

PLAINTIFFS' MOTION FOR SANCTIONS FOR DEFENDANT'S
WILLFUL SPOLIATION OF EVIDENCE AND FAILURE TO
APPEAR FOR DEPOSITION (Cause No. CV 10-1562 RSL)
Page 14

THE BLANKENSHIP LAW FIRM, P.S.
1201 Third Avenue, Suite 2880
Seattle, Washington  98101
(206) 343-2700

gb160601