THE HONORABLE ROBERT S. LASNIK

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, *et al.*, | Case No. 10-1562RSL |
| Plaintiffs, | **FRY'S MOTION FOR SUMMARY JUDGMENT ON THE SEXUAL HARASSMENT CLAIM ASSERTED BY EEOC ON BEHALF OF AMERICA RIOS** |
| v. | |
| FRY'S ELECTRONICS, INC., | **NOTE ON MOTIONS CALENDAR: April 13, 2012** |
| Defendant. | |
| | **ORAL ARGUMENT REQUESTED** |

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

# I.    INTRODUCTION

Defendant Fry's Electronics, Inc. (Fry's) moves for summary judgment of all claims asserted by the Equal Employment Opportunity Commission (EEOC) on behalf of America Rios because: (1) EEOC's claims are barred since Rios never filed an administrative charge and her claim is not "nearly identical" to Plaintiff Intervenor Lam's claims; and (2) the undisputed evidence shows that Rios did not experience objectively offensive sexual harassment, nor was the alleged harassment sufficiently severe or pervasive.

# II.    STATEMENT OF FACTS

## A.    Procedural History[1]

The EEOC filed suit against Fry's on Rios's behalf on September 29, 2010. The Court ultimately consolidated Rios's separately filed individual claims with this lawsuit. The EEOC's complaint asserts that Fry's subjected Rios to a sexually hostile environment.[2]  Rios separately claims that Fry's also retaliated against her for complaining about harassment.[3] The EEOC asserts its claims under Title VII even though Rios never filed a discrimination charge with the agency.   Rios apparently asserts her claims only under the Washington Law Against Discrimination.[4]

## B.    About Fry's

Headquartered in San Jose, California, Fry's operates 34 retail electronics stores in several states around the country. This matter arises from the Renton, Washington store.[5] During the relevant time frame, roughly late 2006 through February 18, 2008, the Renton Store Manager was Art Squires, the Assistant Store Manager was Minasse Ibrahim, and the Manager of the Audio/Visual Department was Duc Le.[6] Kathy Kolder was the Executive Vice President and one

---

[1] Because the Court is aware of the complex procedural history, Fry's provides only an abbreviated discussion.
[2] Dkt. No. 1.
[3] See USDC, Western District of WA Case No. 2:11-cv-00543-RSL, Dkt. No. 1.
[4] RCW 49.60.
[5] Dkt. No. 1 at 3, l. 20.
[6] Mr. Le's first name is pronounced *duke*.

FRY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE
SEXUAL HARASSMENT CLAIM ASSERTED BY EEOC ON RIOS'S
BEHALF - 1
(Case No – 10-1562RSL)

**Jackson Lewis LLP**
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

of the four founders of Fry's.[7]  Lisa Souza was the Manager of Enterprise Risk Management. Ms. Kolder and Ms. Souza are located at the Home Office in San Jose.[8]

Fry's policy strictly prohibits harassment, discrimination, and retaliation of any kind.[9]  Fry's takes all complaints, including sexual harassment complaints, seriously, and is committed to providing a work environment free of harassment. Fry's Open Door policy provides associates with multiple avenues to address harassment concerns.[10]  Associates may address a concern with any member of management with whom they feel comfortable, regardless of that manager's status within the company.  In fact, every associate has a direct line of contact to company President Randy Fry.  In every store, associates have access to "Tell Randy" forms, which associates may use for any reason to communicate an issue directly to Mr. Fry.[11]  In addition, the company maintains an anonymous hotline that associates may use to lodge any form of concern or complaint but are reluctant to approach management directly. All managers and associates are trained on these policies when hired, and the policies are set forth in the Associate Handbook, which is issued to associates during that training. Both Lam and Rios acknowledged receipt of the Associate Handbook when hired.[12]  Both Lam and Rios received harassment and discrimination training and were familiar with the Tell Randy procedure.[13]

In addition to Fry's anti-discrimination and retaliation policies, the company's Associate Handbook includes other personal standards of conduct, for example, policies pertaining to absenteeism and tardiness.[14]

Fry's takes a proactive approach to human resource-related services it provides its employees. The "HR" department is referred to as the, Fry's Benefits Services Department. If an

---

[7] Deposition of Kathryn Kolder (Kolder Tr.) 52:4-7, attached as Ex. 1 to Declaration of Michael A. Griffin (Griffin Decl.) filed in support of this Motion.
[8] Kolder Tr. 6:1-4; Deposition of Lisa Souza (Souza Tr.) 61:25-62:4, 64:15-19, attached as Ex. 2 to Griffin Decl.
[9] Griffin Decl. Ex. 3 at 26-28.
[10] Griffin Decl. Ex. 3 at 22-24.
[11] Griffin Decl. Ex. 4; Deposition of Art Squires (Squires Tr.) 112:16-115:24, attached as Ex. 5 to Griffin Decl.; Griffin Decl. Ex. 3 at 24.
[12] Deposition of Ka Lam (Lam Tr.) 230:16-25, attached as Ex. 6 to Griffin Decl.; Deposition of America Rios (Rios Tr.) 189:8-12, attached as Ex. 7 to Griffin Decl.
[13] Kolder Tr. 195:8-199:21; Lam Tr. 87:25-88:13.
[14] Griffin Decl. Ex. 3 at 38-39.

FRY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SEXUAL HARASSMENT CLAIM ASSERTED BY EEOC ON RIOS'S BEHALF - 2
(Case No – 10-1562RSL)

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

associate raises a harassment complaint to Benefits Services, typically Benefits Services works with the Store Manager to investigate the matter unless there is a good reason he or she should not be the investigator (such as if the Store Manager is the accused).[15]

## C.   Rios's Employment At Fry's

Fry's hired Rios in July 2005. She remained a non-management associate throughout her employment.  On or about October 2006, she transferred to the A/V department, when Lam became her direct supervisor.  It was then that Lam began to show his affections toward Rios.[16]

## D.   Rios Complains to Lam and Le About Ibrahim, But Instructs Them Not to Tell Mr. Squires

Rios testified that in and around May 2007, she complained to Lam that Ibrahim had sent her text messages that made her uncomfortable.  Lam testified that he asked Rios to meet him outside the store so she could show him the texts, which she did.  Lam characterized the texts as "smoking gun"[17] evidence of alleged harassment, and he actually held Rios's phone in his hand when viewing the alleged texts.  Rios testified that in one of the texts Ibrahim commented that she looked good, and the other invited her to his apartment to drink whiskey, and vaguely referred to her breasts.[18] These are the only two text messages that any witness has testified about or provided any detail from the beginning of this matter at the EEOC.[19] Neither in her draft letter explaining everything about Ibrahim's alleged texts, in her EEOC interview, nor in her deposition could Rios articulate the substance of any other alleged text messages.[20]

While Rios later testified at deposition that Ibrahim sent her "too many [offensive texts] to count" that testimony is contradicted by her own prior admissions to the EEOC. [21]

---

[15] Kolder Tr. 55:12-57:15, 59:6-12; Souza Tr. 55:10-56:12.
[16] Rios Tr. 34:7-35:5, 51:21-25, 53:4-7; Deposition of Duc Le (Le Tr.) 53:5-55:19, attached as Ex. 8 to Griffin Decl.; Squires Tr. 235:9-236:12.
[17] Lam Tr. 179:15-182:17.
[18] Rios Tr. 228:24-229:13, 171:2-172:10, 235:1-5.
[19] See id., see also Rios Tr. 236:2-238:5; Le Tr. 40:24-42:5, 34:11-35:4; Squires Tr. 233:23-235:16.
[20] See Rios Tr. 236:2-238:5; Griffin Decl. Exs. 9-11.
[21] See id.

FRY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SEXUAL HARASSMENT CLAIM ASSERTED BY EEOC ON RIOS'S BEHALF - 3
(Case No – 10-1562RSL)

**Jackson Lewis LLP**
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

Importantly, even after speaking with the EEOC, when she clearly knew that the "smoking gun" text message were highly relevant to a federal investigation, Rios destroyed every text message she claims was on her phone, thus ensuring that the Court and the jury will never be able to see the texts.[22]   Lam also admits doing nothing to ensure that the alleged texts were preserved.[23]

Rios also showed Mr. Le one of the two text messages.  Mr. Le immediately suggested that they bring the matter to Mr. Squires, but Rios refused. Mr. Le then suggested that Rios use the anonymous hotline to complain about the matter, and she told him she would think about it.[24] About one week later, Lam approached Mr. Le about the same, single text message and stated that he was going to contact Home Office about the matter.  Mr. Le encouraged him to do so.[25]

Importantly, Rios directly confronted Ibrahim on the sales floor and told him to stop texting her.  Ibrahim complied with her instruction and never spoke to Rios again.[26]

Given Rios's inability to articulate what, if anything, was offensive about the "too many to count" texts and given that she herself willfully spoliated the evidence, it would be unreasonable to assume that they were offensive.[27]

E.    **Fry's Home Office Learns of Rios's Allegations and An Investigation Begins Immediately**

At some point in early May 2007, Lam called Fry's Home Office in an attempt to reach Ms. Kolder to inform her of Rios's allegations.[28] Ms. Souza received the call and took a short, simple message that Lam had called for her.[29]  Also around this time, perhaps even the same day, Rios allegedly called the hotline and reported the alleged text messages.[30]  When Ms. Kolder learned

---

[22] Rios Tr. 210:15-211:20.
[23] Lam Tr. 71:15-72:23, 9:7-11, 52:8-19; 182:4-12.
[24] Le Tr. 38:7-23.
[25] Le Tr. 40:24-45:12.
[26] Rios Tr. 239:17-240:13, 261:7-9.
[27] Ibrahim admits texting Rios (and other associates) for business reasons. Deposition of Minasse Ibrahim (Ibrahim Tr.) 215:20-216:14, attached as Ex. 12 to Griffin Decl.
[28] Lam Tr. 203:22-205:17.
[29] Souza Tr. 24:11-26:16.
[30] Rios Tr. 247:25-249:4.

FRY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE
SEXUAL HARASSMENT CLAIM ASSERTED BY EEOC ON RIOS'S
BEHALF - 4
(Case No – 10-1562RSL)

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

of the alleged misconduct, she immediately directed Mr. Squires (who happened to be at the Home Office for financial meetings) to investigate the matter.[31]

When Mr. Squires returned to the store a day or two later, he immediately investigated.[32]  He interviewed Rios and Messrs. Le, Lam, and Ibrahim.  Mr. Ibrahim emphatically denied the allegations, including providing a written statement to that effect.[33] Rios never offered to show Mr. Squires the "uncountable" text messages.[34] No other witnesses corroborated Rios's current allegations, and neither she nor Lam showed or offered to show Mr. Squires the alleged text message(s).[35]  Accordingly, Mr. Squires was unable to determine that Ibrahim had done anything inappropriate.

## F.   Rios's Draft Letters

On May 22 and 23, 2007, Rios with the help of her mother purportedly created a draft letter to Ms. Kolder explaining "**everything**" about the alleged harassment by Ibrahim.  Rios took her time to ensure that the letter was professionally written.[36] Rios testified her memory about the events was better in May 2007 when she was typing the letter than it is now, many years later.[37] In relevant part, the letter state as follows:

> May 22 Letter:
>
> Recently, in May 2007
> Once again, Minasi text me saying (put what he said here) I did not respond.  I went to my Manager Audio Video told him and forward[38] text message that Manasi had sent me.  I was very upset, felt violated did not know how to pretend that nothing happen.  I did ask my manager Duke to not say a word, cause I did not know how to handle this. My feeling were overwhelmed and felt uncomfortable, stressout, not wanting to work but I had to since no one knows of this of what has happen to me nor I did not what to do, felt confused, I tried to let it go but kept bothering me and made me feel ackward at work.  By the end of

---

[31] Kolder Tr. 122:16-125:11.
[32] Squires Tr. 264:18-266:12.
[33] Griffin Decl. Ex. 13; Ibrahim Tr. 42:12-43:1.
[34] Rios Tr. 180:4-25.
[35] Lam Tr. 213:10-13, 214:25-215:7.
[36] Rios Tr. 192:15-195:25.
[37] Rios Tr. 195:21-196:22.
[38] "Forward" should be "showed," as Rios admits she did not forward any texts messages to anyone.  Rios Tr. 149:13-15; 228:17-23.

FRY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SEXUAL HARASSMENT CLAIM ASSERTED BY EEOC ON RIOS'S BEHALF - 5
(Case No – 10-1562RSL)

**Jackson Lewis LLP**
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

week, after I spoke with my manager Duke.  I made my decision on calling Home Corp regarding action on sexual harassment on Assistant Store Manager Mansasi last name.[39]

* * *

May 23, 2007:

I have been getting text messages to my cell phone from Assistant Store Manager Minasse Ibraham. It did seem fairly odd, but never really click to me.  I didn't response back. **I didn't receive any message for about 3 to 4 months till I moved to Audio Video Department**.  Then later, I was promoted to Camera-camcorder Sales in Audio Video Department.  Minasse Ibraham [sic] text me again, I didn't response [sic] back, I ignore text message, but one day around end of April, I got a message from him saying "wow you look very nice today" then another message right after "how about I bring the drinks and you bring those 2 (referring to my boobs).  At that moment I knew this went out of hand. Right then and there I forward[40] my department manager Duc Le and told him I can't take this no more because it has been stressing me out and affecting my performance at work as well.  I was very upset, felt violated did not know how to pretend that nothing happen.  I did ask my manager duc le to not say a word to anyone because I was afraid to tell Art my store manager knowing that I might get fired of this happening.

My feeling were overwhelmed and felt uncomfortable stress out, not wanting to work but I had to since no one knows of this of what has happen to be nor I did not know what to do, felt confused, I tried to let it go but it kept bothering me and made me fell more awkward at work.

By the end of week, I made my a decision on calling Home office and the silent witness hotline regarding action on sexual harassment on Assistant Store Manager Minasse Ibraham which brings me to write this letter, since I strongly feel I am going to get fired.

Minasse has never talked to me at work regarding the whole text messages that were sent to me. A week later minasse had come back to the Audio Video Department we were talking at work, I was already stressed out and irritated with everything.  Then, I had to tell him I am tired of you texting me and talking to me inappropriate and not associated about work. Just please leave me alone.  **Minasse and I never talked after that**, I went to talk to speak with Art my store manager about the situation.

Saturday May 12, 2007 Art Squires, Duc Lee, and I had a meeting in the office I told them everything that has been going on with me. Art had mention I had

---

[39] Griffin Decl. Ex. 10. Spelling, grammar, and usage errors are in the original.
[40] Again, "forward" should be "showed."

gotten secret shop that was real bad.  I received another secret shop and did poor too.  Apparently, it was the same person that secret shopped me the first time.[41]

Rios drafted these letters when she still had all the alleged text messages from Ibrahim in her phone.[42]

## G.   Rios's admissions to the EEOC

Before Rios hired her private attorney, she was interviewed by the EEOC at length on April 18, 2010.  Rios was honest with the EEOC, understanding the seriousness and importance of being truthful.[43]  The EEOC investigator took detailed notes of Rios's statements.[44]   Rios identified only two specific text messages that she found offensive, only one of which had a sexual connotation about her breasts.  Rios expressly admitted that Ibrahim "**never touched me inappropriately.** He touched me on my shoulder softly, but I took his hand off and told him never to touch me again.  He never did."[45]

Rios told the EEOC that the letter she drafted on her mother's computer had all the details about the alleged harassment. That draft letter was allegedly created in May 2007, when the alleged messages were sent and still existed on Rios's phone, so she had the benefit of being able to review the texts while drafting her letter.  Rios told the EEOC: "I wrote [the letter] out, and I wish that I had it because it has **specific dates and what the text messages are and everything, who I talked to, everything.**"[46] She expressed her urgency to find that letter because "I have **so much information** on that letter."[47] Rios apparently provided the letter to the EEOC.

---

[41] Griffin Decl. Ex. 9. Spelling, grammar, and usage errors are in the original.
[42] Griffin Decl. Ex. 11.
[43] Rios Tr. 150:1-151:12, 297:19-20.
[44] Griffin Decl. Ex. 11.
[45] Griffin Decl. Ex. 11 at EEOC 000326.
[46] Griffin Decl. Ex. 11 at EEOC 000325.
[47] Id.

FRY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SEXUAL HARASSMENT CLAIM ASSERTED BY EEOC ON RIOS'S BEHALF - 7
(Case No – 10-1562RSL)

**Jackson Lewis LLP**
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

Rios also admitted to the EEOC that Fry's reason for her termination, poor sales, was accurate, but she blames her poor performance on wild, unsupported speculation about "being watched" after complaining.[48]

## III.   LEGAL ARGUMENT

### A.   Summary Judgment Standard

Rule 56(c) permits judgment as a matter of law when no material issues of fact are disputed. A fact issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[49]  No "genuine issue" exists when the only evidence presented is "uncorroborated and self-serving" testimony.[50]  The non-moving party is only entitled to reasonable inferences from the facts,[51] and must respond with something more than conclusory allegations, speculation or argumentative assertions that unresolved factual issues exist.[52] The Ninth Circuit routinely affirms summary judgment in employment cases.[53]

### B.   EEOC Is Barred From Asserting A Claim on Rios's Behalf Because She Did Not File A Discrimination Charge and Cannot Piggyback on the Charge Filed by Ka Lam.

The EEOC seeks relief for America Rios even though she undisputedly failed to exhaust her administrative remedies by filing a discrimination charge with the EEOC. A plaintiff must exhaust administrative remedies before asserting a Title VII claim as this court previously held on March 17, 2011.[54] This requirement applies regardless of whether the claim is brought by the

---

[48] *Id.* at EEOC 000326. Rios further stated that her sales were "great" before she complained, which is contradicted by documentary evidence. See Griffin Decl. Ex. 14.

[49] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

[50] *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996); *see generally Johnson v. Washington Metro. Transit Auth.*, 280 U.S. App. D.C. 53, 883 F.2d 125, 128 (D.C. Cir. 1989) (discussing cases in which self-serving testimony uncorroborated by other evidence did not create a genuine issue of material fact).

[51] *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 n.10 (9th Cir. 2002).

[52] *See Wallis*, 26 F.3d at 890.

[53] *See, e.g., Mihailescu v. Maryville Nursing Home*, 2009 U.S. App. LEXIS 16202 (9th Cir. July 22, 2009); *Diaz v. Connolly*, 2009 U.S. App. LEXIS 11688 (9th Cir. May 13, 2009) (affirming summary judgment of discrimination and retaliation claim where plaintiff failed to show pretext); *Mischel v. Caithness Operating Co., LLC*, 2009 U.S. App. LEXIS 9711 (9th Cir. March 12, 2009).

[54] 42 U.S.C. § 2000e-16(c); *EEOC v. Fry's Electronics, Inc.*, 770 F. Supp. 2d 1168; 2011 U.S. Dist. LEXIS 28041 [Dkt. No. 47]; *see also Sommatino v. United States*, 255 F.3d 704, 707-08 (9th Cir. 2001).

FRY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SEXUAL HARASSMENT CLAIM ASSERTED BY EEOC ON RIOS'S BEHALF - 8
(Case No – 10-1562RSL)

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

individual plaintiff, or by the EEOC on the plaintiff's behalf.[55]   The claims urged by the EEOC on behalf of Rios should be dismissed for two reasons:  1) they are not sufficiently similar to Lam's retaliation claim to apply the single-filing rule; and 2) they are untimely.

This case had a tortured procedural history while it was pending at the EEOC.  Lam filed his charge of discrimination on October 5, 2007, and the final determination of conciliation failing happened on September 22, 2010.  During the three-year pendency of the administrative charge, the EEOC vacated its first two reasonable cause findings, finally settling on its third version of the findings about three years into the investigation.  In fact, the Commission waited more than a thousand days after Lam's charge was filed to expand its findings to include allegations concerning Rios.  Significantly, before a notice on August 10, 2010, 34 months into the so-called investigation, the EEOC gave no notice that claims on behalf of Rios were being investigated. The following were the key procedural milestones of the administrative process at the EEOC:

| | |
|---|---|
| 10/05/2007 | Charge Filed by Lam (Alleges Retaliation) |
| 12/15/2008 | EEOC Issues Reasonable Cause notice |
| 12/17/2008 | EEOC Makes Conciliation Demand for Lam Only |
| 3/23/2009 | EEOC Determines Conciliation has Failed |
| 5/27/2009 | EEOC Reopens the Investigation of the Charge |
| 7/16/2009 | EEOC Rescinds the 12/15/2008 Cause Finding |
| 9/8/2009 | Fry's Electronics Requests Reconsideration |
| 10/1/2009 | EEOC Denies Reconsideration and Reaffirms |
| 10/8/2009 | EEOC Makes Conciliation Demand |
| 10/21/2009 | Fry's Responds to Demand, Seeks Information on Damages |

---

[55] *EEOC v. Pierce Packing Co.*, 669 F.2d 605, 607 (EEOC cannot bring suit prior to exhaustion of all conditions precedent: a charge, notification, investigation, determination, conciliation, failure of conciliation) *United States EEOC v. NCL Am., Inc.*, 536 F. Supp. 2d 1216, 1220 (D. Haw. 2008) (Prior to bringing a Title VII suit, the EEOC must satisfy certain conditions precedent including receiving a charge of an unlawful employment practice, notifying the employer of the alleged wrongful act and conducting an investigation to determine whether there is reasonable cause to believe the charge is true; engaging in "informal methods of conference, conciliation, and persuasion" to eliminate the alleged unlawful practices; and if the conciliation efforts are unsuccessful, the EEOC must notify the employer in writing.)

FRY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SEXUAL HARASSMENT CLAIM ASSERTED BY EEOC ON RIOS'S BEHALF - 9
(Case No – 10-1562RSL)

**Jackson Lewis LLP**
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

| | | |
|---|---|---|
| 10/27/2009 | EEOC Responds, Provides No Detail on Damages | |
| 11/13/2009 | EEOC Determines Conciliation Failed | |
| 4/23/2010 | EEOC Rescinds Determination dated October 1, 2009 | |
| 8/10/2010 | EEOC Issues Notice of Intent to Find Cause | |
| | **(for the first time, mentioning Rios as an alleged victim)** | |
| 8/19/2010 | Fry's Requests Reconsideration | |
| 8/23/2010 | EEOC Issues Reasonable Cause Determination | |
| 8/23/2010 | EEOC Makes Conciliation Demand for Lam and Rios | |
| | **(For first time, making demand for Rios)** | |
| 9/22/2010 | EEOC Determines Conciliation Unsuccessful[56] | |

The EEOC will surely invoke the "single filing" rule, a judicial construct placed onto Title VII intended to obviate the need for "futile" charge filings. The EEOC will claim that Lam's charge somehow makes claims on behalf of Rios appropriate and timely. The courts have adopted and applied the so-called "piggyback" or "single-filing" exception to the exhaustion requirement of Title VII. This exception—often applied in a class action context—allows a party who did not file a timely discrimination charge to still seek relief by joining a lawsuit on behalf of another charging party who has timely filed, where the claims arise out of the same or similar discriminatory conduct.[57]

As this Court correctly held in ruling upon Rios's motion to intervene in this case, this requires that the claims be "nearly identical" to one another.[58] Other courts addressing similar issues have correctly declined the application of the single filing rule to cases where the charges were same or factually similar to the underlying charge. *EEOC v. Albertsons, LLC*[59] (Age discrimination and retaliation claims do not arise out of similar discriminatory treatment where charge alleges hostile work environment and disparate treatment based on race and national

---

[56] *See* Griffin Decl. Exs. 14-31 for the correspondence documents supporting the above list of events.
[57] *See Horton*, 343 F.3d at 899.
[58] [Dkt. No. 47] 770 F. Supp. at 1172.
[59] 247 F.R.D. 638 (D. Colo, Dec. 3, 2001).

FRY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE
SEXUAL HARASSMENT CLAIM ASSERTED BY EEOC ON RIOS'S
BEHALF - 10
(Case No – 10-1562RSL)

**Jackson Lewis LLP**
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

origin); *Bradley v. Florida Department of Transportation*[60] (denying application of "single filing rule" where charging party and non-charging party alleged discrimination on separate occasions, by separate individuals, for separate reasons, and under distinct circumstances); *Scott v. Onyx Waste Servs. Midwest*[61] (declining to apply the rule because underlying circumstances of alleged discriminatory termination are different despite that both individuals asserted race discrimination claims and were terminated for violating the same policy); *Griffin v. Dugger*[62] (charge for discriminatory testing would not support claim for discriminatory discharge or promotion); *Ezell v. Mobile Housing Bd.*, 709 F.2d 1376, 1381 (1983) (charge for discriminatory discharge would not support claim for discriminatory testing).

As previously noted by this Court, in *Horton v. Jackson County Board of County Commissioners*,[63] Judge Posner noted that while the two complainants in that case "are intertwined, that is true in every retaliation case in which a worker is retaliated against for having supported another worker's claim. It would be a curious interpretation of the doctrine to rule that a timely charge need never be filed in such a case; yet that is the implication of allowing mere similarity to excuse the failure to file." *Id.* The court warned that at the very least the doctrine should be limited to cases in which the alleged discriminatory conduct arose from the same—and not merely a related—set of facts, as this Court previously reasoned:

> [U]nless the single-filing doctrine is limited to cases in which the claims arise from the same facts rather than merely from facts that resemble each other or are causally linked to each other, courts will perforce be excusing the filing of a timely charge in *every* case in which an employee alleges retaliation for supporting another employee's charge.[64]

Thus, application of the doctrine should "be limited to cases . . . in which the unexhausted claim arises from the *same* unlawful conduct." *Id.* (emphasis in original). Here, the Court confronts exactly the same situation as did the court in Horton. The same result is indicated.

---

[60] 2002 U.S. Dist. LEXIS 27475 (N.D. Fla. 2002).
[61] 2011 U.S. Dist. LEXIS 92475 (N.D. Ill. Aug. 18, 2011).
[62] 823 F.2d 1476, 1492-93 (11th Cir.1987) cert. denied, 486 U.S. 1005, 108 S. Ct. 1729, 100 L. Ed. 2d 193 (1988).
[63] 343 F.3d 897 (7th Cir. 2003).
[64] *EEOC v. Fry's Electronics, Inc.* [Dkt No. 47], 70 F. Supp. at 1173; (quoting *Horton*, 343 F.3d at 901).

FRY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE
SEXUAL HARASSMENT CLAIM ASSERTED BY EEOC ON RIOS'S
BEHALF - 11
(Case No – 10-1562RSL)

Rios never filed an EEOC charge, and for that reason, neither she nor the EEOC on her behalf can assert Title VII claims because the claims, though factually interrelated, are distinct.[65] Lam and Rios's claims do not arise from the same allegedly unlawful conduct.  EEOC asserts one claim on behalf of Lam: retaliation.  EEOC asserts one claim on behalf of Rios: sexual harassment.  The primary "bad actor" on EEOC's Rios claim is Ibrahim.  By contrast, it is undisputed that Ibrahim had no involvement in or knowledge of Lam's termination until after the decision was recommended and approved by others.[66]  Lam was terminated in May 2007.  Rios was terminated nine months later for entirely different reasons.  The trial of each claim will be supported by different witnesses and different evidence, and pursued under different legal theories.  As in *Horton*, these claims involve "different [allegedly] unlawful acts."[67]  Allowing EEOC to maintain claims on behalf of Rios, long after the deadline for filing a charge with the EEOC has lapsed, would undermine the statutory requirement of a timely charge of discrimination.    Accordingly, neither Rios nor the EEOC should be excused from the statutory exhaustion requirement, and all claims asserted by EEOC on behalf of Rios should be dismissed.

Additionally, the claims are untimely, even if asserted by the EEOC.  The EEOC first notified Fry's that Ms. Rios may have a discrimination claim more than three years after the alleged discrimination began, in a letter dated August 10, 2010.  By the time this notice came to Fry's, the Lam charge had been pending for 1040 days.  Rios had been discharged from employment 904 days prior to the first notice to Fry's that the EEOC was investigating concerns about her.    After the company confronted Ibrahim with the allegations on or before May 15, 2007 (and Rios testified that at most two text messages came to her thereafter), Rios and the EEOC allowed 1,180 days to lapse before notifying Fry's that it was under investigation for anything other than allegations involving Lam.

---

[65] *See Horton, supra.* (rejecting piggyback exception where two plaintiff asserted inter-related claims). Like *Horton*, this lawsuit involves only two individuals claiming discrimination.  Holding Ms. Rios—and other claimants in her position—to the statutory exhaustion requirement would not result in a "flood" of administrative charges with the EEOC.  See also, *United States EEOC v. NCL Am., Inc.* (D. Haw. 2008)(n.55 supra. for proposition that EEOC must meet same charge requirements as Rios.

[66] Ibrahim Tr. 149:5-9. There is no testimonial or documentary evidence that Ibrahim was involved in any way in Lam's termination, which is the only act of retaliation EEOC or Lam claims.

[67] 343 F.3d at 901.

FRY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SEXUAL HARASSMENT CLAIM ASSERTED BY EEOC ON RIOS'S BEHALF - 12
(Case No – 10-1562RSL)

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

Title VII, however, requires that a charge of discrimination be filed—and the employer be notified of such charge—within 300 days of the alleged discriminatory act.    Here, Rios was terminated effective February 18, 2008, and 300 days after that date is December 14, 2008. Fry's had no notice of any claim by or on behalf of Rios by December 14, and would not receive notice until 20 months later on August 10, 2010.  Accordingly, Rios's claims—asserted 604 days after the last possible act of alleged discrimination or retaliation—are barred.[68]  As the United States District Court in *Freeman II* held:

> [F]or claims not included in the original charge, measuring the 300-day limitation period from the date of notice to the employer is not at odds with the statutory language. The EEOC's right to expand the investigation without filing a new charge is a right carved out by case law and this interpretation is in accordance with that case law.[69]

The EEOC first notified Fry's that it had been investigating claims for Rios on August 10, 2010. Before that, Fry's had no reason to believe that Rios was making any claims or that the EEOC was making any claims on her behalf.

Though District Courts within the Ninth Circuit have not shied away from injecting themselves into EEOC investigations and conciliation efforts,[70] this case cries out for intervention because of the egregiousness and the unfair prejudice caused by the EEOC and Rios's failure to preserve the alleged evidence that is at the heart of EEOC's harassment claim. The EEOC utterly failed for years to notify Fry's, investigate, make findings or engage in good faith conciliation efforts.  Moreover, when Fry's asked the EEOC to explain the basis for its demands, first on behalf of Lam and, much later, on behalf of Rios, the EEOC offered no explanation.  The EEOC is required to explain the basis for its demands in the conciliation process and maintain a flexible attitude with respect to conciliation.[71]  Where it does not,

---

[68] *EEOC v. Freeman*, 2011 U.S. Dist. LEXIS 8718; 111 Fair Empl. Prac. Cas. (BNA) 678 (D. Md. 2011) ("Freeman II).
[69] *Freeman*, 2011 U.S. Dist. LEXIS 8718 at *9-*10.
[70] *EEOC v. Dillards*, 2012 U.S. Dist. LEXIS 16945, *27-*28 (S.D. Cal. 2012)
[71] *EEOC v. High Speed Enterprise, Inc.*, 2010 U.S. Dist. LEXIS 111330, *13-*17 (EEOC must provide information on how it reached conciliation demands and regarding mitigation of damages; stay or dismissal following bad faith conciliation by EEOC entrusted to sound discretion of the Court).

FRY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE
SEXUAL HARASSMENT CLAIM ASSERTED BY EEOC ON RIOS'S
BEHALF - 13
(Case No – 10-1562RSL)

dismissal is within sound discretion of the court.[72]   As one court has described it, "[t]he fundamental question is the reasonableness and responsiveness of the EEOC's conduct under all the circumstances."[73]   Where the EEOC has maintained a litigious and adversarial posture in conciliation, and has abandoned its neutral, investigative role, dismissal, rather than a stay and order to conciliate, is the proper remedy.[74]

Here, the EEOC declined to meaningfully respond to Fry's requests for information on December 23, 2008 (basis of determination, supporting evidence, calculation of back wages, mitigation information and basis for compensatory damages), and again on August 23, 2010 (seeking clarification on "various reporting requirements" imposed by the EEOC, back wages calculations, mitigation of damages, pay rate at mitigation job for Lam, request to address the statute of limitations for Rios).   Instead, the EEOC increased its request for compensatory damages by $100,000 for Lam and demanded the maximum statutory relief on a time-barred claim by Rios.  This amounts to bad faith conciliation negotiations.

It is now five years after the operative facts occurred with respect to Rios and Lam. Memories have long ago faded.  Rios herself willfully spoliated the most critical evidence in her and Lam's case—the alleged text messages—and EEOC was complicit in that spoliation by failing to take any action to prevent it.  By their actions and inaction, Rios and the EEOC have prevented Fry's from effectively defending itself.  The EEOC has failed to engage in good faith conciliation and it should not be rewarded for this conduct. All claims asserted by EEOC on Rios's behalf should be dismissed.

---

[72] *Id.*
[73] *EEOC v. Bloomberg L.P.*, 751 F. Supp 2d. 628, 642 (S.D.N.Y. 2010).
[74] *Id.* at 643.  (After five acrimonious months, dialogue and attitudes had soured and where further efforts of conciliation have become futile, proper remedy for failure to conciliate in good faith is dismissal).

FRY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SEXUAL HARASSMENT CLAIM ASSERTED BY EEOC ON RIOS'S BEHALF - 14
(Case No – 10-1562RSL)

**C.**   **The Undisputed Facts Show that the Alleged Harassment Was Neither Severe nor Pervasive Enough to Affect the Terms And Conditions of Rios's Employment.**

1. <u>EEOC cannot establish a hostile work environment as a matter of law.</u>[75]

To be unlawful, sexual harassment must be so severe or pervasive as to create a hostile work environment.[76] An employer is liable for conduct giving rise to a hostile environment where the employee proves: (1) verbal or physical conduct of a harassing nature, (2) that the conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.[77] Conduct must be "extreme" to constitute a change in the terms and conditions of employment; "a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."[78] The required showing of severe conduct varies inversely with the pervasiveness of the conduct, such that the less severe the conduct, the more pervasive it must be to violate the law.[79]

Courts look at all the circumstances to determine whether an environment is sufficiently hostile or abusive. This includes examining the "'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"[80] The Supreme Court has long emphasized that the standards for judging hostility must remain sufficiently demanding so that Title VII does not become "a general civility code."[81] "Properly applied, [the applicable standards are designed to] filter out complaints attacking the ordinary tribulations of the

---

[75] The same legal principles apply to both the Title VII and WLAD claims *See Estevez v. Faculty Club of Univ. of Wash.*, 129 Wn. App. 774, 790 (2005).
[76] *See Montero v. AGCO Corp.*, 192 F.3d 856, 860 (9th Cir. 1999); *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998).
[77] *Pavon v. Swift Trans. Co., Inc.*, 192 F.3d 902, 908 (9th Cir. 1999).
[78] *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-788 (1998).
[79] *Ellison*, 924 F.2d at 878.
[80] *Faragher*, 524 U.S. at 787-788 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)).
[81] *Faragher*, 524 U.S. at 788.

FRY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SEXUAL HARASSMENT CLAIM ASSERTED BY EEOC ON RIOS'S BEHALF - 15
(Case No – 10-1562RSL)

**Jackson Lewis LLP**
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing."[82]

Under *Faragher/Ellerth*, an employer may raise an affirmative defense to damages or liability when subject to vicarious liability for the actions of a supervisor. The employer must show by a preponderance of the evidence that (1) the employer took reasonable care to prevent and correct sexually harassing behavior; and (2) the plaintiff unreasonably failed to take advantage of preventive or corrective opportunities provided by the employer or to avoid harm otherwise.[83]   The defense is not available if the harassment results in a tangible employment action "such as, discharge, demotion or undesirable reassignment."[84]

Even drawing all reasonable inferences in EEOC's favor, EEOC cannot show either severe or pervasive conduct that created an objectively hostile or abusive environment that altered Rios's terms or conditions of employment.  Rios's draft letter to Kolder is the most authoritative, reliable, and complete recitation of the alleged harassment.  This is because that letter was created at the time the alleged harassment occurred, it was Rios's own words unfiltered by EEOC or private counsel,[85] and because Rios admitted to the EEOC in 2010 that the 2007 letter had all the details of Ibrahim's alleged harassment.  Rios understood the importance of telling the truth to the EEOC, and she did so in her 1 hour, 26 minute interview on April 18, 2010.[86]

And what she said is that "everything" about the alleged harassment was contained within the draft letter she wrote to Ms. Kolder.  Everything.  Yet that letter says nothing about "staring," "groping," or "too many [offensive texts] to count."[87]   Rather, the letter identifies two text messages that Rios alleges were offensive.  She vaguely refers to other texts from Ibrahim but, importantly, she does not say in her letter that any texts besides the two specific texts were offensive or sexual in nature, and it would be unreasonable to assume that they were.

---

[82] *Id.* (citations omitted).
[83] *Ellerth*, 524 U.S. at 765.
[84] *Id.*
[85] Though apparently edited by her mother; see Griffin Decl. Exs. 9-10.
[86] Rios Tr. 297:19-20, 255:5-11; Griffin Decl. Ex. 11.
[87] Griffin Decl. Exs. 9-10.

**Jackson Lewis LLP**
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

Four plus years later and with the benefit of counsel, Rios testified differently about the alleged harassment, including disavowing at least one of her prior truthful statements to the EEOC. Rios testified that: (1) Ibrahim stared at her in a sexual way—Rios never mentioned this in her May 23, 2007, letter nor in her April 2010 EEOC interview, and it is conveniently impossible to verify whether this occurred because Ibrahim denies it;[88] (2) Ibrahim sent her "too many [offensive texts] to count"—though she was still only able to identify two specifically, and again, this cannot be verified because of Rios's admitted spoliation of evidence;[89] (3) Ibrahim "groped" her shoulder on one occasion.[90] This allegation conflicts directly with Rios's prior, truthful statement to the EEOC that Ibrahim "never touched [her] inappropriately,"[91] and again, when the matter was fresh in Rios's mind, she failed to record this in her May 2007 letter.

The Court may only draw reasonable inferences in Rios's favor, not unreasonable, inferences. It would be unreasonable to infer from Rios's testimony about "too many texts to count" that any of the texts besides the two specifically identified in Rios's letter were offensive, particularly since it was Rios who willfully spoliated the texts at a time when both she and the EEOC clearly knew that the texts were highly relevant evidence in Lam's charge.[92] The only reasonable assumption regarding the texts is that there was at least one of a mildly sexual nature and at least one complimenting Rios on her appearance. To assume there were "countless'" offensive texts would be unreasonable, particularly given that Rios admitted "When I got a text message, I would ignore it, or if I did answer, I would let him know in no uncertain words that I was not interested."[93]

It would also be unreasonable to assume that there were too many offensive texts to count in view of Rios's admissions that "everything" about Ibrahim's text messages was contained within

---

[88] Rios Tr. 256:25-257:11; Ibrahim Tr. 42:12-43:1; Griffin Decl. Ex. 13.
[89] Rios Tr. 252:23-253:2, 210:15-211:20.
[90] Rios Tr. 173:14-174:24.
[91] Griffin Decl. Ex. 11 at EEOC 000326.
[92] *See United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1547 (9th Cir. 1989)(inferences may be drawn from a nonmoving party's direct and circumstantial evidence to establish a genuine issue of material fact so long as such evidence was of sufficient "quantum or quality".) *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987) (an inference as to another material fact may be drawn in favor of the nonmoving party only if it is "rational" or "reasonable")
[93] Griffin Decl. Ex. 11 at EEOC 000325.

FRY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SEXUAL HARASSMENT CLAIM ASSERTED BY EEOC ON RIOS'S BEHALF - 17
(Case No – 10-1562RSL)

**Jackson Lewis LLP**
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

her May 2007 letter, that letter says nothing of the kind, and Rios's memory was better in 2007 than in 2011 when she gave her deposition. Importantly, Rios and Lam were the only two witnesses who had custody or control over the "smoking gun" text messages. They admit doing nothing to preserve that evidence. Rios kept the texts for over a year and she even had them when she first spoke to the EEOC.[94]  When EEOC informed Rios that she was time-barred from filing a charge, Rios then destroyed the alleged texts even though she knew that the EEOC was investigating Lam's charge and that the texts were highly relevant evidence. The EEOC did nothing to either obtain or preserve the texts which Rios admittedly still had in 2008 when she first spoke with the EEOC.

What remains then are: (1) a text inviting Rios to drink that allegedly makes an obtuse reference to her breasts; (2) a text that Rios "looked good"; (3) a single touch on the shoulder that was not offensive to Rios before she was represented by counsel but what she now considers a "grope"; and (4) vague, unverifiable staring. The only specific sexual connotation in the whole case is the alleged text vaguely reference to Rios's breasts. Concerning the alleged invitation to drink, the Ninth Circuit recognized in *EEOC v. Prospect Airport Services, Inc.*[95] that "not all propositions for romance or more are sexual harassment." Instead, the conduct must go beyond the "merely offensive" so that it changes the terms and conditions of the victim's job. Even if this invitation was unwanted and offensive (which Fry's does not concede), Rios admits that she mainly ignored the texts but at some point directly confronted Ibrahim in person, they never spoke again, and Ibrahim possibly sent her a "couple" more texts, but again, Rios has no specific information about those texts, and they are not mentioned in her May 2007 letter or in her April 2010 EEOC interview.[96] Rios does not claim that after she confronted Ibrahim that he continued to pressure her for dates, pressured her to drink alcohol, or that he made overt or veiled sexual references of any kind.

---

[94] Griffin Decl. Ex. 11 at EEOC 000325.
[95] 621 F.3d 991 (9th Cir. 2010); see also *Weiss v. Coca-Cola Bottling Co. of Chicago*, 990 F.2d 333, 337 (7th Cir. 1993)(no hostile environment where a superior asked employee for dates, called her a "dumb blonde," put his hand on her shoulder several times, placed "I love you" signs in her work area, and tried to kiss her in a bar.)
[96] Griffin Decl. Exs. 9-11, Rios Tr. 236:2-238:5, 239:17-240:13, 261:7-9.

FRY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE
SEXUAL HARASSMENT CLAIM ASSERTED BY EEOC ON RIOS'S
BEHALF - 18
(Case No – 10-1562RSL)

As a matter of law, the alleged harassment cannot be considered severe or pervasive. Ibrahim's alleged conduct was far less severe or pervasive than conduct that the Ninth Circuit has deemed insufficient as a matter of law. For example, in *Candelore v. Clark County Sanitation Dist.*,[97] the Court found that isolated incidents of sexual horseplay or inappropriate behavior *over a period of years* is not so egregious as to render work environment hostile. Additionally, in *Anderson v. Family Dollar Stores of Arkansas, Inc.*[98], more egregious conduct than that at issue here was not sufficiently severe or pervasive. In that case, the Court held that the employer's conduct of rubbing plaintiff's shoulders or back during her training session, calling plaintiff "baby doll" during a telephone conversation, accusing her of not wanting to be "one of my girls," a one-time, long-distance suggestion that she should be in bed with him and a Mai Tai in Florida, and the insinuation that she could go farther in the company if she got along with him were not severe enough to have altered a term, condition, or privilege of her employment.[99]

Likewise, in *Laying v. Twin Harbors Group Home Association*,[100] Judge Burgess dismissed the plaintiff's sexual harassment claim on summary judgment where a co-worker asked plaintiff to go out a half-dozen times, sent flowers to the plaintiff at home and at work accompanied by a card signed "Love You" and gave plaintiff a gold watch.  These repeated, unwanted advances were not sufficiently severe and pervasive to give rise to a hostile work environment as a matter of law.  The Court in *Hererra v. Midwest Medical Transport Co.*,[101] faced a similar, but slightly more egregious set of facts where a co-worker sent plaintiff text messages on her cell phone, discussed things of a sexual nature and offered to pay her $150 to perform oral sex, and repeatedly poked her in the right side of her breasts. This conduct, far worse than that alleged by

---

[97] 975 F.2d 588, 590 (9th Cir. 1992).
[98] 579 F.3d 858 (8th Cir. 2009).
[99] *See also Brooks v. City of San Mateo*, 229 F.3d 917, 921-924 (9th Cir. 2000) (affirming summary judgment for defendant where alleged harasser, while alone with plaintiff, placed his hand on her stomach and commented on its softness and sexiness; positioned himself behind her chair, boxing her in against a console; forced his hand underneath her sweater and bra to fondle her bare breast; and attempted to fondle her breasts again, all despite plaintiff's physical and verbal objections).
[100] 2006 U.S. Dist. LEXIS 4491(W.D. Wa. Jan. 23, 2006)
[101] 2007 U.S. Dist. LEXIS 43013 (D.Neb. June 12, 2007)

FRY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE
SEXUAL HARASSMENT CLAIM ASSERTED BY EEOC ON RIOS'S
BEHALF - 19
(Case No – 10-1562RSL)

**Jackson Lewis LLP**
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

Rios, was not sufficient to affect any term, condition or privilege of the plaintiff's employment.[102]

Additionally, the harassment alleged by Rios is much less significant than that present in cases where the Ninth Circuit has concluded that a hostile environment exists.[103] And many courts have dismissed hostile environment claims where the alleged harassment took the form of a few offensive electronic communications.[104]

Even if Rios can show that she subjectively considered Ibrahim's alleged text messages, alleged single shoulder touch, and alleged staring offensive, the conduct as alleged was not

---

[102] *See Hererra*, 2007 U.S. Dist. Lexis 43013 at *17-18; see also *See Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871 (5th Cir. 1999)(several inappropriate comments and touching over the course of two years were not objectively severe or pervasive enough to constitute actionable sexual harassment); *Weiss v. Coca-Cola Bottling Co.*, 990 F.2d 333, 337 (7th Cir. 1993)(finding that conduct that included attempting to kiss plaintiff twice at work, several incidents of unwanted touching, and asking plaintiff out on dates were not sufficient for actionable harassment).

[103] *See EEOC v. Prospect Airport Servs.*, Inc., 621 F.3d 991 (9th Cir. 2010) (employee provided "cleavage" picture of herself to victim, gave him repeated love notes, described her dreams of them in the bath tub together, made repeated sexual gestures, referenced her lack of sexual gratification and told co-workers that she loved and wanted victim); *Montero v. AGCO Corp.*, 192 F.3d 856 (9th Cir. 1999) (supervisor made crude gestures, told plaintiff he had sexual dreams about her, and tried to put his head between her knees, and another employee made vulgar remarks and placed notes on plaintiff's desk telling her to take off all her clothes); *Anderson v. Reno*, 190 F.3d 930 (9th Cir. 1999)(plaintiff endured eight years of sexually-harassing incidents, including being referred to as the office sex goddess, receiving vulgar notes, being patted on the buttocks, and finding a drawing of a pair of breasts labeled "Operation Cupcake"); *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104 (9th Cir. 1998) (supervisor made sexual remarks about plaintiff over two year period, told her about his sexual fantasies, told other employees it would be fun to get into her pants, and used loudspeaker to ask her whether she needed help changing clothes); *EEOC v. Hacienda Hotel*, 881 F.2d 1504 (9th Cir. 1989) *overruled on other grounds, Burrell v. Star Nursery, Inc.*, 170 F.3d 951 (9th Cir. 1999)(repeated vulgarities, sexual remarks, and requests for sexual favors by a supervisory employee subjected employees to severe and pervasive sexual harassment).

[104] *See, e.g., Piccone v. Town of Webster*, 2011 U.S. Dist. LEXIS 84574 *36-37 (W.D.N.Y. August 2, 2011) (two offensive emails were insufficient to constitute unlawful harassment); *Nolan v. Swartz Campbell*, LLC, 2008 U.S. Dist. LEXIS 15501 (W.D. Penn. Feb. 29, 2008) (5-8 offensive emails, some of which referred to penis size, depicted four nude rear-ends with the caption "guess which a—hole called," and contained vulgarities—was not sufficient to create hostile work environment); *Reed v. Metro. Gov't of Nashville & Davidson County*, 286 Fed. Appx. 251, 253-54 (6th Cir. 2008) (holding that "unsavory mass emails" that were "inappropriate and unprofessional" were insufficient to create a hostile environment); *Curtis v. DiMaio*, 46 F. Supp. 2d 206, 213-214 (E.D.N.Y. 1999) ("The case law makes clear that the sending of a single offensive e-mail does not create a hostile work environment."); *Johnson v. Jung*, 2009 U.S. Dist. LEXIS 89078, 25-26 (N.D. Ill. Sept. 28, 2009) (showing of sexually explicit video is not severe or pervasive to constitute sexual harassment); *O'Dell v. Trans World Entm't Corp.*, 153 F. Supp. 2d 378, 386-387 (S.D.N.Y. 2001) (conduct not severe or pervasive though employee repeatedly asked plaintiff out, made comments about her appearance, sent her emails professing his love for her, called her at work and at home, invited her to tour New York City with him, gave her gifts, and played her a song she found offensive. Plaintiff did not allege any inappropriate touching or a pattern of verbal abuse"); *Spencer v. Saline County Med. Ctr.*, 2010 U.S. Dist. LEXIS 10162 (E.D. Ark. Feb. 5, 2010) (Statements, email, and placing hand on plaintiff's shoulder not severe or pervasive; plaintiff was not touched other than on her shoulder, nor was she the object of repeated intimidation and ridicule; no evidence plaintiff worked in constant fear of being groped or fondled).

FRY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE
SEXUAL HARASSMENT CLAIM ASSERTED BY EEOC ON RIOS'S
BEHALF - 20
(Case No – 10-1562RSL)

objectively offensive, severe, or pervasive enough to alter Rios's working environment.  While Rios claims her sales suffered as a result of the alleged conduct and Lam's termination, objective, documentary evidence belies that.  Rios's sales actually <u>increased</u> in the weeks after Lam was terminated, the time when she arguably would have been the most upset.[105]

Rios continued working for many months after Ibrahim stopped texting her, never once complaining about her work environment to anyone, and never once blaming her poor sales on the prior alleged harassment.  There is no evidence that Rios was contemplating quitting, and her statements that she "needed the job" is starkly contradicted by the fact that after she was terminated, she moved home with and was supported by her mother.[106] She did not even file for unemployment benefits, and she didn't go back to work for nearly 20 months.[107] Because Rios cannot show that Ibrahim's alleged conduct was sufficiently severe, pervasive, or objectively offensive to alter the terms and conditions of her employment, her hostile work environment harassment claim must be dismissed.

## IV.   CONCLUSION

Summary judgment is still a viable procedural tool to weed out employment lawsuits where no genuine issues of material fact warrant a fact finder's examination.  This is such a case. The EEOC cannot maintain any claims on Rios's behalf because Rios's claims are not nearly identical to Lam's, Rios never filed a timely charge, and EEOC cannot—more than two years after the fact—piggyback on Lam's timely charge to assert untimely allegations on behalf of Rios.  In addition, Rios's harassment claim fails because even viewing the facts in the light most favorable to her, no reasonable jury could conclude that she experienced severe or pervasive harassment. Accordingly, the Court should dismiss with prejudice all claims asserted by EEOC on behalf of Rios.

---

[105] Griffin Decl. Ex. 32.
[106] Rios Tr. 290:22-291:19.
[107] Rios claims to have been looking for work, but there is no support for this assertion. Rios Tr. 283:6-287:12.

FRY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE
SEXUAL HARASSMENT CLAIM ASSERTED BY EEOC ON RIOS'S
BEHALF - 21
(Case No – 10-1562RSL)

**Jackson Lewis LLP**
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

1    DATED this 22nd day of March, 2012.

2

3                                    JACKSON LEWIS LLP

4                                By:____/s/ Michael A. Griffin_____
                                     Michael A. Griffin, WSBA #29103
5                                    Barry Alan Johnsrud, WSBA #21952
                                     April Upchurch Olsen, WSBA #31910
6                                    Jackson Lewis LLP
                                     One Union Square
7                                    600 University Street, Suite 2900
                                     Seattle, WA  98101
8                                    Telephone:  (206) 405-0404
                                     Facsimile:  (206) 405-4450
9                                    E-mails:  griffinm@jacksonlewis.com;
                                     johnsrudb@jacksonlewis.com;
10                                   april.olsen@jacksonlewis.com
                                     Attorneys for Defendant
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FRY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE
SEXUAL HARASSMENT CLAIM ASSERTED BY EEOC ON RIOS'S
BEHALF - 22
(Case No – 10-1562RSL)

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

1

## DECLARATION OF SERVICE

2

The undersigned declares under penalty of perjury under the laws of the United States of

3

America and hereby certifies that on this date, a true and accurate copy of the document to which

4

this declaration is affixed was filed with the Clerk of the Court using the CM/ECF System,

5

which will send notification of such filing to the following:

6

7

8

William R. Tamayo, Regional Attorney
P. David Lopez, General Counsel

9

John Stanley, Supervisory Trial Attorney
Carmen Flores, Senior Trial Attorney

10

May Che, Trial Attorney
James Lee, Deputy General Counsel

11

Molly Powell, Lead EEOC Counsel
Gwendolyn Reams, Associate General Counsel

12

909 First Avenue, Suite 400
Seattle, WA 98104

13

206-220-6919
Attorneys for Plaintiff EEOC

14

15

Scott Crispin Greco Blankenship
Richard E. Goldsworthy

16

The Blankenship Law Firm
1201 Third Avenue, Suite 2880

17

Seattle, WA 98101
206-343-2704

18

sblankenship@blankenshiplawfirm.com

19

rgoldsworthy@blankenshiplawfirm.com
Attorneys for Ka Lam & America Rios

20

21

Dated this 22nd day of March, 2012, at Seattle, Washington.

22

23

24

Sarah Baker-Brown

25

4810-5108-6607, v. 2

26

27

28

FRY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE
SEXUAL HARASSMENT CLAIM ASSERTED BY EEOC ON RIOS'S
BEHALF - 23
(Case No – 10-1562RSL)

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404