**THE HONORABLE ROBERT LASNIK**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>FRY'S ELECTRONICS INC.,<br><br>Defendant**.** | Case No.  2:10-cv-1562-RSL<br><br>PLAINTIFF EEOC'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON THE SEXUAL HARASSMENT CLAIM ASSERTED BY EEOC ON BEHALF OF AMERICA RIOS<br><br>**NOTE ON MOTION CALENDAR:**<br>**Friday, April 13, 2012** |

This Court must deny Defendant's Motion for Summary Judgment on the Sexual

Harassment Claim Asserted by EEOC on Behalf of America Rios in its entirety because: (1)

Defendant's "single filing/piggybacking" argument is inapplicable to cases in which the EEOC is

a litigant and thus there is no procedural deficiency in the EEOC's claim on Rios' behalf; and (2)

a reasonable jury could find that the harassment suffered by Rios was severe or pervasive.

## I.     Relevant Facts

### A.    America Rios Was a Strong Performer Who Was Sexually Harassed by Assistant Manager Ibrahim.

America Rios was hired by Fry's in July 2005 as a customer service associate. *See*

*Declaration of Molly Powell in Support of Plaintiff EEOC's Response to Defendant's Motion for*

*Summary Judgment, exhibit 14 ("hereinafter, "Powell Decl., Exh. 14")*.  From the beginning of

her employment Ms. Rios excelled, consistently coming in at or near the top of her department in

EQUAL EMPLOYMENT
OPPORTUNITYCOMMISSION
Seattle Field Office
909 First Avenue, Suite 400
Seattle, Washington  98104-1061
Telephone:  (206) 220-6883
Facsimile:  (206) 220-6911
TDD:  (206) 220-6882

sales. *Powell Decl., Exh. 1; p. 64:11-22.*  She was twice selected to what Fry's calls the "A-Team," a group of elite employees who are selected to help train new associates and open new Fry's stores throughout the county.   *Powell Decl., Exh. 1, 91:1-13*; *Exh. 5,* 180:1-24; *Exh. 6*, 58:2-15.  "A Team" positions are only awarded to those employees who are currently excelling in their jobs.  *Powell Decl., Exh. 6*, 58:2-15; *Exh. 2,* 232 19-20. Several witnesses have testified that it is an honor to be selected to the "A Team" and Ms. Rios treated it as such. *Powell Decl., Exh. 6*, 58:2-15.

In early 2006, Ms. Rios transferred from the customer service department to the returns department. Almost immediately, Ms. Rios began to notice Assistant Store Manager Minasse Ibrahim regularly staring at her in a sexual way, looking her up and down and locking his eyes on specific body parts, especially her breasts. *Powell Decl., Exh. 1; p.* 140:21-144:1; 141:18-142:20; 175:8-176:1. The leering continued and escalated into Ibrahim sending text messages of a sexual nature to Ms. Rios on a regular basis. At first the text messages focused on trying to get Ms. Rios, who was not yet 21 years old, to come drink with Ibrahim, often late at night and always alone. Ms. Rios received text messages from Ibrahim while she was out socializing with other Fry's employees asking her to "not end the night shortly" and to hang out with Ibrahim, sometimes at two or three in the morning *Powell Decl., Exh. 1; p.* 146:21-147:8.  All of Ibrahim's text messages and advances were sexually harassing and unwanted. *Powell Decl., Exh. 1; p.* 146:2-9.

Ibrahim's sexually harassing behavior and text messages continued into 2007 (after Ms. Rios had transferred to the A/V department) and became increasingly hostile and offensive. Ibrahim began commenting on what Rios was wearing and how she looked, and made comments about Rios' breasts. For example, Ibrahim sent Rios one particularly offensive text telling her she looked sexy that day and then writing "how about I bring the drinks and you bring those two [referring to her breasts]." *Powell Decl., Exh. 1; p.* 146:21-147:2.  When Rios confronted

**EQUAL EMPLOYMENT**
**OPPORTUNITYCOMMISSION**
**Seattle Field Office**
**909 First Avenue, Suite 400**
**Seattle, Washington  98104-1061**
**Telephone:  (206) 220-6883**
**Facsimile:  (206) 220-6911**
**TDD:  (206) 220-6882**

Ibrahim and asked him what he meant by "those two," Ibrahim again looked her up and down, stopped at her breasts, and said, "those." *Powell Decl., Exh. 1; p.* 148:13-20.

Ms. Rios asked Ibrahim to stop his harassment on multiple occasions. *Powell Decl., Exh. 1; p.* 148:6-12; 143:11-25.  At one point Ibrahim touched Ms. Rios's shoulder on the Fry's sales floor in a way that made her feel uncomfortable and Ms. Rios had to tell him to stop and never touch her again. *Powell Decl., Exh. 1; p.* 141:25-142:12; 174:13-18.  On another occasion, when the stress of the harassment had become almost unbearable, Rios "approached him [Ibrahim] and told him that he needs to stop and that I just didn't like it.  And I wanted him to leave me alone and like never come around me." *Powell Decl., Exh. 1; p.* 148:21-149:1.  Ibrahim just looked at her and walked away. *Powell Decl., Exh. 1; p.* 170:10-171:1.  The harassment continued. *Powell Decl., Exh. 1; p.* 171:2-172:14.

Ms. Rios complained about sexual harassment by Ibrahim to Fry's Management. Rios complained to her Supervisor in the A/V Department, Mr. Lam, about the harassment by Ibrahim. *Powell Decl., Exh. 1; p.*172:20-173:11. She also complained to her Department Manager, Duc Le. *Id.; Powell Decl., Exh. 1, 244:3-15; Exh. 15.*  Although Manager Le testified he was concerned for Ms. Rios and that Ibrahim's text messages were indeed sexually harassing, he did not inform Fry's Management of Rios' complaints and did not confront Assistant Manager Ibrahim. *Powell Decl., Exh. 2; p* 38:7-39:14; 31:16-32:6.  Instead, Manager Le suggested that Rios either inform Store Manager Art Squires or that she call the "silent witness hotline" and inform Fry's Home Office of Ibrahim's harassment. *Powell Decl., Exh. 2;* 38:7-23.  Rios told Le that she did not want to inform Manager Squires of Ibrahim's sexual harassment because she knew that Squires and Ibrahim were close personal friends and that she was worried about retaliation. *Id.; Powell Decl., Exh. 2;* 39: 15-21.

In Spring 2007, after Ms. Rios showed Mr. Lam a particularly offensive text message she received from Ibrahim, Lam contacted Fry's corporate headquarters to complain.  *Powell Decl.,*

**PLAINTIFF EEOC'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
Page 3 of 26

EQUAL EMPLOYMENT
OPPORTUNITYCOMMISSION
Seattle Field Office
909 First Avenue, Suite 400
Seattle, Washington  98104-1061
Telephone:  (206) 220-6883
Facsimile:  (206) 220-6911
TDD:  (206) 220-6882

*Exh. 3,* 179:15-180:13; 197:11-198:16; *Exh. 4,* 24:11-25:9.  Like Ms. Rios and Duc Le, Mr. Lam knew he could not go directly to Fry's Renton Store Manager Art Squires to complain because Squires was very close personal friends with Assistant Manager Ibrahim.[1]  *Powell Decl., Exh. 3,*at 193:14-194:25.  In light of this relationship, and out of fear of retaliation from Squires, consistent with Fry's own "open door" policy, Mr. Lam decided it would be safer and more prudent to involve someone higher up at Fry's.  *Powell Decl., Exh. 3,*197:11-198:16.  Mr. Lam called Director of Enterprise Risk Management Souza directly to complain on Rios's behalf.  *Powell Decl., Exh. 3,*179:15-180:13; 197:11-198:16; *Exh. 4,* 24:11-25:9.

Rios also complained about Ibrahim's harassing conduct to upper management.  She called the silent witness hotline, and spoke to Souza, as well as Executive Vice President Kolder.  *Powell Decl., Exh. 1; p.* 165:9-169:1.  Rios explained to Kolder that she was being harassed and intended to write her a letter in which she would give more detail. *Powell Decl., Exh. 1; p.* 249:23-250:16.  After asking Kolder for her address, Rios began drafting her letter of complaint.  *Powell Decl., Exh. 1; p.* 248:17-249:18.

Soon after his phone call to Souza, Mr. Lam was confronted by Store Manager Squires.  *Powell Decl., Exh. 3,*211:3-213:2. Squires told Mr. Lam that he had been informed by Kolder of Lam's complaints about Assistant Manager Ibrahim at the Fry's quarterly meeting in San Jose.  *Id.*; *Powell Decl., Exh. 5,* 215:8-216:12.  Rather than assure Lam that his concerns regarding Ibrahim would be handled appropriately, Squires threatened Lam telling him to focus on his job because his performance had not been up to par.  *Powell Decl., Exh. 3,* 211:14-213:2. Squires told Lam that some changes were going to happen and that while he did not plan on firing Lam immediately, he should worry about his job performance. Id. Not surprisingly, Lam left that

---

[1]In fact, Ibrahim described his relationship with Squires as "very close," testifying that, amongst other things, he and Squires lived in the same neighborhood, spent time at each other's houses, played basketball and poker together, were present at the birth of each other's children, attended personal family events like birthdays, and shared a hotel room at the Fry's quarterly meetings in San Jose, a three or four day event.  *Powell Decl., Exh. 6, 79:19-80:22; 188:9-189:14.*

PLAINTIFF EEOC'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Page 4 of 26

EQUAL EMPLOYMENT
OPPORTUNITYCOMMISSION
Seattle Field Office
909 First Avenue, Suite 400
Seattle, Washington  98104-1061
Telephone:  (206) 220-6883
Facsimile:  (206) 220-6911
TDD:  (206) 220-6882

meeting fearful for his job and that he was being retaliated against.  On May 12, 2007, after Squires met with Mr. Lam, Ms. Rios requested a meeting to discuss Ibrahim's sexual harassment. When she met with Squires and explained the harassment, rather than address the issues with Ibrahim, Squires began criticizing Rios' performance, telling her that she had recently received two "secret shops"[2] and had performed poorly on both.  *Powell Decl., Exh. 1; p.* 165:9-169:1.  Squires also reminded Rios that he had previously fired 20 people in the customer service department for similarly "causing drama."[3] Id. Rios took these comments as thinly veiled threats from Squires that if she continued to complain about Ibrahim, she too would be fired.

Around the same time, Squires began asking Ms. Rios questions about her relationship with Mr. Lam, accusing *Mr. Lam* of harassing her rather than Ibrahim. *Powell Decl., Exh. 1; p.* 165:9-169:1; 182:6-18.  Ms. Rios steadfastly denied that Lam had ever harassed her and reiterated that it was Assistant Manager Ibrahim that was sexually harassing her. *Powell Decl., Exh. 1,* 182:6-18.  Like Lam, Rios left the meeting with Squires shaken, worried that she would be retaliated against now that Ibrahim's close friend Squires knew of her complaints. She began putting her complaints in writing, with the assistance of her mother, and intended to send the letter to Exec. V.P. Kolder. *Powell Decl., Exh. 15.*

Despite Ms. Rios's complaints, Squires never documented them.  *Powell Decl., Exh. 5,* 224:1-12; 226:20-227:14; Nor did he document Mr. Lam's complaints. *Id.* He did not fill out a "Harassment and Discrimination Complaint Confidential Investigation Report" form as appears to be standard policy at Fry's. *Powell Decl., Exh. 5,* 223:1-224:12.  He did not get written statements from either Mr. Lam or Ms. Rios. *Powell Decl., Exh. 5,* 226:20-227:14.  He did not

---

[2] "Secret shops" occur when a person paid to pose as a customer comes to the store and later reviews his or her customer experience.

[3] It was rumored throughout Fry's that in 2004 or 2005 Manager Squires terminated a woman who complained of sexual harassment and her entire department, alleging they were engaging in "unproductive conversations" by discussing the harassment.  EEOC 000311-313.

**PLAINTIFF EEOC'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
Page 5 of 26

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Seattle Field Office
909 First Avenue, Suite 400
Seattle, Washington  98104-1061
Telephone:  (206) 220-6883
Facsimile:  (206) 220-6911
TDD:  (206) 220-6882

request to view any of the text messages which were the subject of the complaints. *Powell Decl., Exh. 5,* 266:21-268:1; *Powell Decl., Exh. 1,*180:15-181:9; *Powell Decl., Exh. 6,* 221:9-223:19.

Squires gathered self-serving statements from Ibrahim (who not surprisingly denied he sexually harassed Rios) and two other Fry's employees who would support his goal of protecting Ibrahim and discrediting and retaliating against Mr. Lam and Ms. Rios. *Powell Decl., Exhs. 11, 12, 18.* For example, Squires asked a female associate by the name of Kayla Sando to write a statement alleging she had *not* been sexually harassed by Minasse Ibrahim. *Powell Decl., Exh. 11.* Neither Ms. Rios nor Mr. Lam ever suggested that Ms. Sando had been harassed by Ibrahim.[4] *Powell Decl., Exh. 1; p.* 181:12-182:5.

On or about May 13, the day after Rios reported the harassment directly to Squires, he requested that Kathleen Endzell write a statement against Ms. Rios. *Powell Decl., Exh. 13,* 000462; *Exh. 7,* 61:12-62:22; 65:4-9; 113:25-114:17. Endzell testified that she had gone to Mr. Squires to tell him about a rumor that she had heard about Ms. Rios and that she was upset with Rios. *Powell Decl., Exh. 7,* 113:25-114:17. The rumor was concerning Ms. Endzell's relationship with her ex-boyfriend and nothing to do with sexual harassment, Ka Lam, or Minasse Ibrahim. *Powell Decl., Exh. 13,* 000462. Inexplicably, Fry's included the statement from Endzell in its response to the charge of retaliation by Mr. Lam and the sexual harassment claim of Ms. Rios as evidence from Fry's "investigation." *Powell Decl., Exh. 13.*

In addition, Duc Le testified that *on the very same day Mr. Lam was fired*, Squires directed Le to write a statement accusing *Mr. Lam* of sexually harassing Ms. Rios. *Powell Decl., Exh. 2;* 220:5-222:5. Le wrote this statement at the behest of Squires despite knowing that Rios

---

[4] Derek Montoya, who was the head of loss prevention at the Renton Fry's and was present during Mr. Lam's termination meeting, admitted under oath that he was having a romantic relationship with Ms. Sando. *Powell Decl., Exh. 17,*48:4-21. Under Fry's policy, it is not permissible for anyone in loss prevention to associate at all with anyone from Fry's outside the store. *Id.* at 51:19-52:17. Yet, as of the date of his deposition, Mr. Montoya remained employed by Fry's. *Id.,* at 17:20-22.

**PLAINTIFF EEOC'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
Page 6 of 26

EQUAL EMPLOYMENT
OPPORTUNITYCOMMISSION
Seattle Field Office
909 First Avenue, Suite 400
Seattle, Washington  98104-1061
Telephone:  (206) 220-6883
Facsimile:  (206) 220-6911
TDD:  (206) 220-6882

had actually complained about Assistant Manager Ibrahim, seeing Ibrahim's text messages to Rios, and believing they were sexually harassing. *Powell Decl., Exh. 2;* 35:16-37:10.  When questioned about why he did not write a statement about his knowledge of Ibrahim's sexual harassment, Le testified that Squires did not ask him to write anything about Ibrahim. Id.; *Powell Decl., Exh. 2;* 222:10-223-10.  Rather Squires only requested that Le write a statement against Mr. Lam.  Other than the three self-serving statements listed above, there is no other documentation from Squires relating to his supposed "investigation" of Ms. Rios' complaints of sexual harassment.  Store Manager Squires testified that the Rios/Ibrahim matter was the first he'd ever "investigated", and stated that he had learned a lot since then about how to conduct a proper investigation.  *Powell Decl., Exh. 5,* 55:4-15.  It is not surprising that Squires did such a poor job in his purported investigation of his close friend Ibrahim:  although V.P. Kolder testified that Squires was trained regarding how to sexual harassment investigation and was a designated investigator, Squires testified that he had not been provided any guidance on the investigation process. *Powell Decl., Exh. 5,* 221:2-222:7; Exh. 8, 89:24-91:25.

On May 22, 2007, (two days before Mr. Lam was fired), Rios called A/V District Manager Kevin Karst and asked him if he was aware that she had complained about sexual harassment by Assistant Manager Ibrahim. *Powell Decl., Exh. 1; p.* 165:9-169:1.  Karst claimed that he was not aware of the harassment, but asked Rios if she had put anything in writing. *Id.; Powell Decl., Exh. 15.*  Just **two days** after Ms. Rios informed Karst she was about to send her written complaint to Kolder regarding sexual harassment, Ka Lam was called in to Squires' office put on five-day suspension, and was retaliatorily fired.  *Powell Decl., Exh. 2;* 225:20 - 226:14.  Lam's termination had the desired effect on Rios, who was terrified that she too would be fired in retaliation for complaining about Ibrahim. *Powell Decl., Exh. 1; p.* 247:12-24.  As a result, Ms. Rios never sent the letter she had drafted to Kolder.  *Id.*

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Seattle Field Office**
**909 First Avenue, Suite 400**
**Seattle, Washington  98104-1061**
**Telephone:  (206) 220-6883**
**Facsimile:  (206) 220-6911**
**TDD:  (206) 220-6882**

Ibrahim continued to harass Rios. While the text messages from Ibrahim eventually stopped, the leering, staring, and harassing behavior continued.  *Powell Decl., Exh. 1; p.* 171:8-172:14. Knowing that Lam had been fired for trying to defend her and that her complaints to Kolder, Fry's co-founder and Executive Vice President, may have contributed to his termination, Ms. Rios had nowhere else to turn.  On February 14, 2008, Rios was fired. *Powell Decl., Exh. 9.* Ibrahim had continued to sexually harass her up until her termination, continuing to look her up and down and stare at her body.  *Powell Decl., Exh. 1, 175:8-176:1.* **Rios' termination request was signed by Ibrahim**, the Assistant Store Manager who she had complained about harassing her for years. *Id.*

## II.       Standard For Summary Judgment

Summary judgment is reserved for situations where there are no disputes on material facts.  "Ordinarily, summary disposition of Title VII cases is not favored, especially on a 'potential inadequate factual presentation.'"  *McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 934 (11th Cir. 1987) (quoting *Trevino v. Celanese Corp.*, 701 F.2d 397, 407 (5th Cir. 1983)).  Summary judgment is required when the evidence, viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  That burden may be met by showing that there is an absence of evidence to support the non-moving party's case.  *Id.* at 325.  Once the moving party has met its initial burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and identify facts which show a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 177 U.S. 212, 218 (1986).

The question is whether there is a genuine issue for trial.  *Id.* at 249.  The court must view the evidence in the light most favorable to the non-moving party.  *Fairbank v. Wunderman Cato*

EQUAL EMPLOYMENT
OPPORTUNITYCOMMISSION
Seattle Field Office
909 First Avenue, Suite 400
Seattle, Washington  98104-1061
Telephone:  (206) 220-6883
Facsimile:  (206) 220-6911
TDD:  (206) 220-6882

*Johnson*, 212 F.3d 528, 531 (9th Cir. 2000).  All reasonable doubt as to the existence of a

genuine issue of fact should be resolved against the moving party.  *Addtsu v. Fred Meyer, Inc.*,

198 F.3d 1130, 1134 (9th Cir. 2000).  The inferences drawn from the underlying facts must be

viewed in the light most favorable to the party opposing the motion.  *Tex. Partners v. Conrock

Co.*, 685 F.2d 1116, 1119 (9th Cir. 1982).  Where different ultimate inferences are drawn,

summary judgment is inappropriate. *Jewel Cos., Inc. v. Pay Less Drug Stores, Nw., Inc.*, 741

F.2d 1555, 1566 (9th Cir. 1984).  However, if all reasonable inferences are drawn in favor of the

non-moving party and the evidence is merely colorable or not significantly probative, summary

judgment is appropriate.  *Anderson*, 477 U.S. at 249-50.

### III.    EEOC's Claim on Behalf of America Rios is Properly Before This Court

#### A.  The EEOC Has Authority to Bring a Claim on Behalf of Rios Regardless of Whether She Filed a Charge of Discrimination

Defendant incorrectly conflates two separate requirements:  exhausting administrative

remedies and satisfying the conditions precedent to suit.  Defendant correctly notes that plaintiffs

must exhaust administrative remedies prior to filing suit, which generally requires the filing of a

timely charge of discrimination.  The private plaintiff is also required to limit the claims brought in

its Complaint to the claims it included in its Charge of Discrimination filed with the EEOC.

However, this requirement does not apply to the EEOC when it litigates.  Rather, the EEOC must

satisfy four conditions precedent to suit (discussed in detail in section IV below).  Judge Posner

discusses the difference in requirements between private plaintiffs and the EEOC in *E.E.O.C. v.

Caterpillar, Inc.,* 409 F.3d 831 (7th Cir.2005), as follows:

> The difference between the two classes of case is that exhaustion of
> administrative remedies is an issue when the suit is brought by a private
> party but not when the Commission is the plaintiff. Were the private party
> permitted to add claims that had not been presented in the administrative
> charge filed with the EEOC, the Commission's informal procedures for
> resolving discrimination charges, see 42 U.S.C. § 2000e-5(b); 29 C.F.R. §
> 1601.24, would be by-passed, in derogation of the statutory scheme.
> *(internal citations omitted).* That is not an issue when the EEOC itself is
> the plaintiff, which is why a suit by the EEOC is not confined "to claims

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Seattle Field Office
909 First Avenue, Suite 400
Seattle, Washington  98104-1061
Telephone:  (206) 220-6883
Facsimile:  (206) 220-6911
TDD:  (206) 220-6882

typified by those of the charging party," *General Telephone Co. v. EEOC,* 446 U.S. 318, 331, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980); see also *EEOC v. Waffle House, Inc.,* 534 U.S. 279, 291, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002); *Occidental Life Ins. Co. v. EEOC,* 432 U.S. 355, 368, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977); *In re Bemis,* 279 F.3d 419, 422 (7th Cir.2002), and why Caterpillar is mistaken to think that the EEOC's complaint must be closely related to the charge that kicked off the Commission's investigation. **"Any violations that the EEOC ascertains in the course of a reasonable investigation of the charging party's complaint are actionable."** *General Telephone Co. v. EEOC, supra,* 446 U.S. at 331, 100 S.Ct. 1698. **The charge incites the investigation, but if the investigation turns up additional violations the Commission can add them to its suit.** *Id. at* , 832 -833. (*emphasis added*).

Defendant erroneously argues that, in order for the EEOC to bring suit on behalf of an individual who has not filed a charge, the Commission must invoke the "single filing" rule. This rule allows for claimants who have not filed a charge of discrimination to "piggy back" on the case of claimant who has filed a timely charge of discrimination if the two people assert "nearly identical" claims. Defendant cites *EEOC v. Albertsons, LLC*[5] to support this argument. Again, this requirement of "nearly identical" claims and piggy-backing does not apply to the EEOC, as the EEOC can bring suit on any violation of the law that it finds during a reasonable investigation into a charging party's complaint.

> **B. The EEOC Has Authority to Bring a Claim on Behalf of Rios Regardless of Whether Her Claim is "Nearly Identical" to the Charging Party's Claim and Whether She Filed a "Timely Charge"**

Defendant relies heavily upon *Horton v. Jackson County Board of County Commissioners*, 343 F.3d 897 (7th Cir. 2003), for the proposition that the "single filing" rule does not apply in a case with two individuals, where the charging party has alleged retaliation for supporting the second employee in his or her complaint of discrimination. This case, as

---

[5] *EEOC v. Albertsons, LLC,* 247 F.R.D. 638 (D. Colo. 2001)(analyzing whether an individual could intervene in the EEOC's case, *not* whether the EEOC could bring suit on behalf of the individual).

**PLAINTIFF EEOC'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
Page 10 of 26

EQUAL EMPLOYMENT
OPPORTUNITYCOMMISSION
Seattle Field Office
909 First Avenue, Suite 400
Seattle, Washington  98104-1061
Telephone:  (206) 220-6883
Facsimile:  (206) 220-6911
TDD:  (206) 220-6882

discussed above, is inapplicable.[6]  In *Horton*, the EEOC was not the plaintiff.  The "other victim" of discrimination in *Horton* was a private litigant who was attempting to use Horton's timely charge of retaliation with the EEOC to resurrect his untimely claim.  In Horton, the defendant did not have the opportunity to make use of the EEOC's conciliation services for any potential claims brought by the "other victim," nor did it receive notice of the other victim's potential claims.  Clearly, these facts are far removed from the facts at bar.  Here, the EEOC made a finding with regard to both Ka Lam and America Rios (thus Fry's received notice), *and* made a conciliation demand on behalf of Lam and Rios.  *Powell Decl., Exh. 19; See also Exh. 30 to Def.'s Brief.*  Thus Fry's had the opportunity to participate in conciliation for the claims that the EEOC has brought on Rios's behalf.  *Horton* states, **"[T]he purpose of requiring exhaustion of administrative remedies in Title VII cases is to place the employer on notice of an impending suit that he can try to head off by negotiating with the complainant, utilizing the conciliation services offered by the EEOC.**"[7]  *Id.* 343 F.3d at 898.  (internal citations omitted).  Clearly, Fry's has not suffered any of the alleged or potential disadvantages that was suffered by the defendant in *Horton*, as it received notice of Rios's claim and had the opportunity to conciliate the matter prior to the EEOC filing suit.

"Any violations that the EEOC ascertains in the course of a reasonable investigation of the charging party's complaint are actionable." *General Telephone Co. v. EEOC, supra,* 446.

---

[6] Similarly inapplicable are the following cases cited in support of the same proposition by defendant on page 11, as in each case, the EEOC is not the litigant and the court is analyzing the single filing rule as it applies to private parties:  *Bradley v. Florida Department of Transportation*, 2002 U.S. Dist. LEXIS 27475 (N.D.Fla.2002); *Scott v Onyx Waste Servs. Midwest*, 2011 U.S. Dist. LEXIS 92475 (N.D. Ill.2011); *Griffin v. Dugger*, 823 F.2d 1476 (11the Cir. 1987); and *Horton v. Jackson County Board of County Commissioners*, 343 F.3d 897 (7th Cir. 2003).
[7] Judge Posner puts significant emphasis on the defendant's opportunity to participate in the conciliation process.  "It is a useful process and its use should be encouraged.  When a discrimination charge is filed, the EEOC investigates and, if it 'determines that there is reasonable cause to believe that an unlawful practice has occurred or is occurring,' it will 'attempt to achieve a just resolution of all violations found and to obtain agreement [a 'conciliation agreement'] that the respondent will eliminate the unlawful employment practice and provide appropriate relief.'"  *Id. at 899.*  In fact, Judge Posner states that the concern with applying the single-filing rule to cases in which defendants do not have the opportunity to receive notice and conciliate claims, "would undermine the EEOC's conciliation procedure with no good reason."  *Id. at 901.*

**PLAINTIFF EEOC'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
Page 11 of 26

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Seattle Field Office**
**909 First Avenue, Suite 400**
**Seattle, Washington  98104-1061**
**Telephone:  (206) 220-6883**
**Facsimile:  (206) 220-6911**
**TDD:  (206) 220-6882**

Here, Lam charged that he was terminated after raising a complaint about sexual harassment of his subordinate by the store's Assistant Manager.  A reasonable investigation of such a claim includes investigation into the underlying claim of sexual harassment, which the charging party complained of, as it is necessary to ascertain whether the charging party alleging retaliation had a "reasonable belief" that discrimination or harassment had occurred.  *See Clark County School Dist. v. Breeden*, 532 U.S. 268, 121 S. Ct. 1508 (2001).  Thus the EEOC's claim on behalf of America Rios is properly before this Court.

### IV.     EEOC Met All Conditions Precedent to Filing Suit in this Matter

Title VII guarantees employees the right to work in an environment free from harassment, intimidation, and insults based on sex.  *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65-66 (1986).  Congress has charged the Commission with enforcing this promise and extending its guarantee to virtually all workers through civil litigation against wrongdoers. Before it may file a lawsuit, however, the Commission must satisfy five steps under Title VII's statutory scheme—charge, notice, investigation, reasonable cause finding, and conciliation. *EEOC v. Cal. Psych. Transitions, Inc.,* 725 F.Supp.2d 1100, 1110 (E.D.Cal. 2010) ("*Cal. Psych II*").  Each step is a condition precedent to the next succeeding step, and ultimately, legal enforcement.  *EEOC v. Shell Oil Co.,* 466 U.S. 54, 66 n.16 (1984).  Title VII, as a whole, however, affords the Commission substantial discretion in discharging its duties.  *EEOC v. Alia Corp.*, __ F.Supp.2d __, 2012 WL 393510, *10 (E.D.Cal. 2012).

#### 1.     The Charge and Notice Requirements Have Been Met.

Under Title VII, a charging party must file a charge with the EEOC within either 180 or 300 days of the alleged unlawful employment practice, depending upon whether the alleged violation occurred in a jurisdiction that has a state or local fair employment practices agency ("FEPA") with the authority to grant or seek relief.   Because the events underlying the instant

PLAINTIFF EEOC'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Page 12 of 26

EQUAL EMPLOYMENT
OPPORTUNITYCOMMISSION
Seattle Field Office
909 First Avenue, Suite 400
Seattle, Washington  98104-1061
Telephone:  (206) 220-6883
Facsimile:  (206) 220-6911
TDD:  (206) 220-6882

suit took place in Washington, which has a FEPA (*i.e.*, Washington State Human Rights

Commission), the limitations period was 300 days.  *See* 42 U.S.C. § 2000e-5(e).

Charging Party Lam filed his charge on October 5, 2007, and the EEOC provided Fry's

with notice of the charge on October 15, 2007.  *Powell Decl., Exh. 16*.  There can be no dispute

that his charge was timely because the injury (termination on May 24, 2007) falls within the 300

days limitations period.  The EEOC received timely charges of discrimination and provided

Fry's with notice; consequently, the first condition precedent is met as a matter of law.

> 2.   **The EEOC Conducted an Investigation, Thus Satisfying the Second
> Condition Precedent.**

"[T]he EEOC must conduct *some* investigation of the charge" before bringing suit.

*EEOC v. The Nestle Co.*, 1982 WL 234, *1 (E.D. Cal. 1982) (emphasis in the original); *see also,*

*EEOC v. NCL America, Inc.,* 536 F. Supp. 2d 1216, 1222 (D. Hawaii 2008).  But "[t]he nature

and extent of an EEOC investigation into a discrimination claim is a matter within the discretion

of EEOC." *Cal. Psych. II,* 725 F.Supp.2d at 1113.  Thus, courts reviewing the adequacy of the

Commission's investigation will defer to the agency's judgment, so long as "*some* investigation"

was made.  *Id.* at 1112-13 (emphasis in original).  Indeed, courts routinely reject motions

challenging the adequacy of the EEOC investigation.  In *Nestle Co.*, for example, the court

denied defendant's partial summary judgment motion challenging the adequacy of the

investigation, noting:

> Nestle has not cited any authority for the proposition that the EEOC is
> obligated to undertake a separate investigation of each sort of employment
> discrimination that will be the basis for its complaint.  Nor have any cases
> been cited which set a discernible standard as to what constitutes an
> "adequate" investigation by the EEOC . . . Cases holding that the EEOC
> must initiate *some* investigation of the charge originally filed are obviously
> inapposite to the action at bar.  *See, e.g.*, *EEOC v. Pierce Packing Co.*, Nos.
> 80-3367, 81-3066 (9th Cir. 1982).

EQUAL EMPLOYMENT
OPPORTUNITYCOMMISSION
Seattle Field Office
909 First Avenue, Suite 400
Seattle, Washington  98104-1061
Telephone:  (206) 220-6883
Facsimile:  (206) 220-6911
TDD:  (206) 220-6882

*The Nestle Co*., at *1 (emphases and internal quotes in the original).  *See also*, *EEOC v. James Julian, Inc*., 736 F. Supp. 59, 60 (D. Del. 1990) ("a court shall only disallow a suit by the Commission if it is evident that the Commission failed to even undertake an investigation . . ."); *EEOC v. KECO Industries, Inc*., 748 F.2d 1097, 1100 (6th Cir. 1984) (error for the district court to inquire into the sufficiency of the EEOC's investigation); *EEOC v. General Electric Co*., 532 F.2d 359, 370 n.31 (4th Cir. 1976) (EEOC's investigation not reviewable, noting the substantial "potential for delay and diversion which such an undertaking would create" and the "limited benefit," the court holds, "The Commission's determination does not establish rights or obligations; the respondent is entitled to a trial *de novo* in the district court."); *EEOC v. Chicago Miniature Lamp Works*, 526 F. Supp. 974, 975 (N.D. Ill. 1981), *rev'd on other grounds* (EEOC's investigation and determination are completely discretionary and not subject to review by the court); *EEOC v. Sears, Roebuck & Co.*, 504 F. Supp. 241, 268 (N.D. Ill. 1980) ("[A]ny cloud over the Commission's investigation . . . can be removed through a trial *de novo* of the substantive issues in this proceeding").

Finally, the Ninth Circuit has held that "the jurisdiction for [a] court action is not limited to the actual EEOC investigation, but can include the scope of an 'EEOC investigation which *can reasonably be expected to grow out of the charge of discrimination.*'"  *Sosa v. Hiraoka,* 920 F.2d 1451, 1456 (9th Cir. 1990).  The court in *Sosa* concluded that allegations arising after the initial EEOC charge were "like or reasonably related to" the original EEOC charge filed, such that the subsequent claims could be brought into the lawsuit even if they were not investigated.  *Id.* At 1457.  *See also, NCL America, Inc.,* at 1222-23.

Upon receiving the charges of Lam, the EEOC assigned this charge to an investigation.  The investigation took place in Seattle over the course of several months before the LOD was served, giving the EEOC opportunity to investigate the charge.  *Powell Decl., Exh. 19.*  The EEOC brought suit on behalf of America Rios whose "like or reasonably related" claim came to

EQUAL EMPLOYMENT
OPPORTUNITYCOMMISSION
Seattle Field Office
909 First Avenue, Suite 400
Seattle, Washington  98104-1061
Telephone:  (206) 220-6883
Facsimile:  (206) 220-6911
TDD:  (206) 220-6882

light during the course of the EEOC's investigation.  [Dkt. No. 1].  Accordingly, the second condition precedent is satisfied.

3.      **The EEOC Made a Finding that There Was Reasonable Cause To Believe that Lam and Rios Had Been Discriminated Against**.

After concluding the investigation, the EEOC determined that there was reasonable cause to believe that Defendant had violated Title VII of the Civil Rights Act of 1964.  Accordingly, EEOC issued a Letter of Determination (LOD) to Defendant setting forth its determination with regard to Lam *and Rios* after investigation of the charge.  *Powell Decl., Exh. 19.*  EEOC sent out its LOD for Lam on December 15, 2008, October 8, 2009, and August 11, 2010, after re-opening the investigation to further investigate the charge.  Thus the third condition precedent is met.

4.      **The EEOC Discharged Its Obligation to Attempt to Conciliate**.[8]

Finally, the EEOC satisfied its obligation to attempt conciliation prior to suit as a matter of law.  Section 706(b) of Title VII provides that, if the Commission finds reasonable cause to believe that a charge of discrimination is true, "the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." 42 U.S.C. § 2000e-5(b).  "Title VII's conciliation requirement is a precondition to suit, but it is not jurisdictional."  *Alia Corp.*, 2012 WL 393510, *9 (analyzing Title VII's conciliation requirement in light of recent Supreme Court rulings concerning statutory requirements as jurisdictional limits, and finding that Congress intended no such limitation for the conciliation requirement).  The statute further provides that the Commission is authorized to file suit after thirty days of the filing of a charge "if the Commission has been unable to secure [from defendant] a conciliation agreement *acceptable to the Commission*." 42 U.S.C. § 2000e-

---

[8] Defendant attempts to improperly insert an argument regarding the adequacy of the EEOC's conciliation efforts into its briefing. Def. Brief, P. 12-13.  Adequacy of conciliation is not properly before this Court.  Rather, defendant is simply arguing that the EEOC should not be able to bring a claim on behalf of Rios because her claim does not meet the requirements of the "single filing rule".

**PLAINTIFF EEOC'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
Page 15 of 26

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Seattle Field Office
909 First Avenue, Suite 400
Seattle, Washington  98104-1061
Telephone:  (206) 220-6883
Facsimile:  (206) 220-6911
TDD:  (206) 220-6882

5(f) (emphasis added). This language invests in the Commission the discretion to determine what terms it requires in a conciliation agreement.

Because statutory authority gives the EEOC the right to determine whether or not an agreement is acceptable to the Commission, this Court's review of the conciliation process is limited. Once the EEOC has communicated its conciliation proposal, Title VII does not require that the EEOC "either make a new offer or attempt to persuade [an employer] to change its mind." *EEOC v. Bernina of America*, 2000 U.S. Dist. LEXIS 8336, *12-13 (N.D. Ill. 2000) (noting that "[t]he law does not require the EEOC to become a supplicant"); *see also EEOC v. NCL America, Inc.,* 536 F. Supp. 2d 1216 (D. HA 2008). "The judiciary's role in reviewing the conciliation process is limited, as 'the form and substance of the EEOC's conciliation proposals are within the agency's discretion and, therefore, immune from judicial second-guessing." *EEOC v. Dial Corp*., 156 F. Supp. 2d 926, 940 (E.D. Ill. 2001) (citations omitted). If an employer rejects good faith efforts to conciliate, EEOC is not required to continue its efforts. *EEOC v. Keco Industries, Inc*., 748 F.2d 1097, 1102 (6th Cir. 1984); *EEOC v. Zia Co*., 582 F.2d 527 (10th Cir. 1978); *EEOC v. Jacksonville Shipyards, Inc*., 696 F. Supp. 1438, 1444 (M.D. Fla. 1988); *EEOC v. Rymer Foods*, 50 FEP Cases (BNA) 787, 788 (N.D. Ill. 1980). The good faith conciliation requirement is properly limited to a good faith effort to allow an out of court settlement, rather than a good faith effort to meet the defendant on its own terms.  In *U.S. v. Dept. of Corrections*, 1990 WL 145599, *7 (E.D. Cal. 1990), the Court stated, "The EEOC can refuse any counteroffer; further it is not required to show that it was flexible in settlement negotiations." *Id*.; *see also*; *EEOC v. Canadian Indemnity Co*., 407 F. Supp. 1366, 1367 (C.D. Cal. 1976) (where defendant did not agree to all terms in EEOC's conciliation offer, EEOC was within its discretion to reject counteroffer and proceed to litigation); *EEOC v. Prudential Federal Savings & Loan Assoc.*, 763 F.2d 1166, 1169 (10th Cir. 1985) (where employer refused to undertake any significant dialogue, rejected EEOC's initial settlement proposals and refused to

EQUAL EMPLOYMENT OPPORTUNITYCOMMISSION
Seattle Field Office
909 First Avenue, Suite 400
Seattle, Washington  98104-1061
Telephone:  (206) 220-6883
Facsimile:  (206) 220-6911
TDD:  (206) 220-6882

offer any serious counter proposals, Commission had fulfilled statutory duty); *EEOC v. St. Anne's Hosp*., 664 F.2d 128, 131 (7th Cir. 1981) (conciliation prerequisite satisfied where EEOC invites defendant to conciliate).

Here, the EEOC invited Defendant to conciliate on behalf of Ka Lam and America Rios on August 23, 2010.[9],[10]   The EEOC was within its discretion when it determined that further conciliation efforts would not yield a conciliation agreement *acceptable to the Commission*, and it proceeded to court.  In the case of Lam (and Rios), the EEOC engaged in conciliation efforts for over a month. The Commission's efforts were sufficient to determine that an acceptable agreement would not be reached and conciliation efforts could be discontinued.

## V.     The Harassment Rios Suffered Was Both Severe *And* Pervasive; Defendant's Summary Judgment Argument Fails

### A.   Defendant is Inappropriately Asking This Court to Make a Credibility Determination at Summary Judgment

Defendant attempts to disguise its credibility argument in an argument about "unreasonable inferences."  *Def's brief, P. 17*.  Defendant states that her deposition testimony "conflicts directly" with her prior statements to the EEOC.  *Id.*  Defendant further claims that Rios' testimony regarding the number of texts she recalls receiving from Ibrahim should not be believed because it is "unreasonable" that Rios would testify that she received "too many texts to count" and then only specifically describe two texts when she was being interviewed by the EEOC investigator.  At bottom, defendant is asking this Court to believe that Ms. Rios is lying, and therefore grant summary judgment for defendant.  Assessing the credibility of a claimant is the province of the jury.  Defendant's arguments regarding credibility are misplaced in a motion

---

[9] The EEOC also invited Fry's to conciliate on October 14, 2009 and August 23, 2010, after the initial two LODs were issued.

[10] By its Motion, Defendant has consented to the EEOC's disclosure of its conciliation counter-proposal and email communications. *See EEOC v. Rockwell Intern'l Corp.*, 922 F.Supp. 118, 120 (N.D.Ill. 1996) (employer waived statutory confidentiality by raising the "scope of . . . conciliation efforts" in its motion).

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Seattle Field Office
909 First Avenue, Suite 400
Seattle, Washington  98104-1061
Telephone:  (206) 220-6883
Facsimile:  (206) 220-6911
TDD:  (206) 220-6882

for summary judgment, where this Court must view the evidence in the light most favorable to the non-moving party as required by Fed. R. Civ. P. 56(c).

### B.  A Reasonable Jury Could Find That Ms. Rios Was Subjected to a Sexually Hostile Work Environment.

When evaluating motions for summary judgment in the context of employment discrimination, the Ninth Circuit has emphasized "the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and opportunity to evaluate the credibility of witnesses." *McGinest v. GTE Services Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004).  Underscoring the general reluctance towards granting summary judgment, the court has stated that a plaintiff in an "employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment . . . because 'the ultimate question is one that can only be resolved through a searching inquiry-one that is most appropriately conducted by a factfinder upon a full record.'" *Chuang v. Univ. of Cal. Davis Bd. of Trustees*, 225 F.3d 1115, 1124 (9th Cir. 2000) (quoting *Schnidrig v. Columbia Mach., Inc.,* 80 F.3d 1406, 1410 (9th Cir. 1996)).

"Title VII guarantees employees 'the right to work in an environment free from discriminatory intimidation, ridicule, and insult.'" *Davis v. Team Electric Co.*, 520 F.3d 1080, 1095 (9th Cir. 2008) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)).The law prohibits employment discrimination on the basis of sex, "which includes sexual harassment in the form of a hostile work environment." *EEOC v. Prospect Airport Services, Inc.*, 621 F.3d 991, 997 (9th Cir. 2010).  Sexual harassment may reveal itself in the form of "[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature." *Meritor Sav.Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986).  As the Supreme Court has stated, "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation

EQUAL EMPLOYMENT
OPPORTUNITYCOMMISSION
Seattle Field Office
909 First Avenue, Suite 400
Seattle, Washington  98104-1061
Telephone:  (206) 220-6883
Facsimile:  (206) 220-6911
TDD:  (206) 220-6882

of the words used or the physical acts performed." *Oncale v. Sundowner Offshore Serv., Inc.,* 523 U.S. 75, 81-82, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998).

To establish a hostile work environment, a claimant must show that: (1) she was subjected to verbal or physical conduct of sexual nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe *or* pervasive to alter the conditions of the claimant's employment and create an abusive work environment. *Id.*

Ibrahim sexually harassed Ms. Rios for months over a period of years, sending her countless text messages at all hours of the night, asking her to come drink with him alone, lewdly commenting on her body parts, and staring her up and down. *Powell Decl., Exh. 1; p.* 140:21-144:1; 175:8-176:1. Defendant does not argue that Ibrahim's conduct was not sexual in nature or that it was not unwelcome. Indeed, Ms. Rios found the sexually harassing conduct from Mr. Ibrahim so distressing and unwelcome that she complained to multiple Fry's managers and directors, including Director Souza and Executive V.P. Kolder. *Powell Decl., Exh. 1; p.* 145:22-146:9; 164:11-168:24; *Ex. 15.* Thus, the only question raised by Defendant is whether Ibrahim's sexually harassing behavior was sufficiently severe or pervasive to create an abusive working environment.

The test for whether a hostile working environment was severe or pervasive has both subjective and objective components.[11] *Prospect Airport Services*, 621 F.3d at 999. "Whether a working environment is objectively 'abusive' 'can be determined only by looking at all the circumstances.'"*Id.* (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)). To be objectively abusive the environment need only be one that a reasonable person *in the plaintiff's position* would find hostile, considering all of the circumstances. *Ellison v. Brady*, 924 F.2d 872, 879 (9th Cir. 1991). Thus, in Ms. Rios' case, a sexually objectionable environment must be

---

[11] Defendant relies upon several non-binding decisions from outside of the Ninth Circuit. The EEOC will focus its analysis on binding authority.

**PLAINTIFF EEOC'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
Page 19 of 26

EQUAL EMPLOYMENT
OPPORTUNITYCOMMISSION
Seattle Field Office
909 First Avenue, Suite 400
Seattle, Washington  98104-1061
Telephone:  (206) 220-6883
Facsimile:  (206) 220-6911
TDD:  (206) 220-6882

viewed from the perspective of a *reasonable woman*. *Id*. In close cases the Ninth Circuit has held "it is more appropriate to leave the assessment to the fact-finder than for the court to decide the case on summary judgment." *Davis*, 520 F.3d at 1096.

  i) <u>Assistant Store Manager Ibrahim subjected Ms. Rios to severe *and* pervasive sexual harassment</u>

  Viewing the evidence in the light most favorable to Rios, as the Court must on summary judgment, there is no question that Assistant Manager Ibrahim's sexually harassing conduct was severe, pervasive, and altered the terms and conditions of Rios' employment. Rios was subjected to months of sexual harassment by Ibrahim, including but not limited to receiving countless sexually harassing text messages at all hours, messages and comments on her breasts and how she looked, text messages asking her to come drink with him alone, unwanted staring and leering, and inappropriate touching. *Powell Decl., Exh. 1; p.* 140:21-144:22. She testified that Ibrahim's conduct was unwanted, harassing, and that it made her very uncomfortable, specifically stating:

> Well I would receive text messages in a sexual way, referring to my breasts; always wanting to hang out with me late at night; always had drinking involved. He'd look me up and down by – like just make you feel uncomfortable and – sorry, I feel really uncomfortable with Art here.  [Referencing the presence of Store Manager Art Squires at the deposition]. *Powell Decl., Exh. 1; p.* 141:3-7.

  Ms. Rios' reaction to Ibrahim's harassing behavior demonstrates the devastating effect it had on her and her job.  *Nichols v. Azteca Rest.*, 256 F.3d 864, 873-74 (9th Cir. 2001) (finding that Plaintiff demonstrated subjective belief that he was being harassed by making internal complaints).  Ms. Rios complained to at least six (6) different supervisors, managers, and directors, including Mr. Lam, Manager Le, Manager Squires, District Manager Karst, Director Souza, and V.P. Kolder. *Powell Decl., Exh. 1; p.* 165:13-168:24; *Exh. 2,* 38:7-39:21; *Exh. 15*. She drafted two complaint letters to V.P. Kolder, one the day before Ka Lam was informed of his termination, describing some of the harassing behavior and stating "it has been stressing me out

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Seattle Field Office
909 First Avenue, Suite 400
Seattle, Washington  98104-1061
Telephone:  (206) 220-6883
Facsimile:  (206) 220-6911
TDD:  (206) 220-6882

and affecting my performance at work," and "my feeling[s] were overwhelmed and felt uncomfortable, stress out, not wanting to work."[12]  *Powell Decl., Exh. 15*. She talked with her mother about the harassment and her friend Jacob Birks. *Powell Decl., Exh. 1; p.* 165:13-168:24; 195:2-10. She specifically confronted Ibrahim and told him in no uncertain terms to stop harassing her, yet the harassing behavior continued. *Powell Decl., Exh. 1; p.* 172:4-13.  Ms. Rios' desperate attempts to get someone at Fry's (other than Mr. Lam) to help her is clear evidence of the severity and pervasiveness of the hostile work environment she was subjected to because of her Assistant Manager's constant harassment. *See Prospect Airport Services*,[13] 621 F.3d at 1000 ("Lamas' emotional testimony about his reaction to Munoz's letters and gestures, his co-workers' statements about Munoz's interest in him, his complaints to his supervisors and Prospect Managers, as well as his complaints to the EEOC… all evidenced pervasiveness amounting to an abusive work environment.").

Not only did Ms. Rios herself feel that her working environment had become abusive due to her Assistant Manager's harassing conduct, but other employees believed that as well. Indeed, **the first thing that Department Manager Le thought of when Manager Squires questioned him about sexual harassment at the Renton Fry's was Ibrahim's sexual harassment of Ms. Rios**. *Powell Decl., Exh. 2*, 33:4-34:3; 35:12-37:23. Le testified that he had seen some of the sexually harassing text messages from Ibrahim to Ms. Rios,[14] and when Manager Squires

---

[12] Defendant argues that these two draft letters contain "everything" about the Assistant Manager Ibrahim's sexual harassment of Ms. Rios. While Plaintiff agrees that the letters are "authoritative" and "reliable," she specifically testified under oath at her deposition that they were not finished, and therefore cannot possibly contain "everything" about Ibrahim's sexual harassment. *Powell Decl., Exh. 1; p.* 225:15 -226:5; 253:25-254:4; *Exh. 15*. Nor did Ms. Rios tell Mr. Benedict "everything" related to Ibrahim's sexual harassment when he interviewed her. *Powell Decl., Exh. 1; p.* 255:12-256:14.

[13] Defendant relies on *EEOC v. Prospect Airport Services, Inc. to demonstrate* that not all propositions for romance are sexual harassment.  However, defendant fails to state that the Ninth Circuit in *Prospect* reversed the lower court which granted summary judgment for the employer.  The Ninth Circuit found that the harassment of a *co-worker*, most of which was communicated via words and gestures (not unwanted touching) raised a genuine issue of material fact regarding a hostile work environment.

[14] At his deposition Le testified that Assistant Manager Ibrahim's sexually harassing text message to Ms. Rios involved asking her (his subordinate) out on a date. However, when pressed for specifics Le did not remember if the

**PLAINTIFF EEOC'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
Page 21 of 26

EQUAL EMPLOYMENT
OPPORTUNITYCOMMISSION
Seattle Field Office
909 First Avenue, Suite 400
Seattle, Washington  98104-1061
Telephone:  (206) 220-6883
Facsimile:  (206) 220-6911
TDD:  (206) 220-6882

informed him he was investigating a sexual harassment complaint without giving any names, Le told him "it might have been Minasse [Ibrahim]." *Powell Decl., Exh. 2,* 33:4-34:8. Le also testified that when Ms. Rios showed him the sexually harassing text messages from Ibrahim he was concerned and recommended that she make a complaint. *Powell Decl., Exh. 2;* 38:7-39:24.

Moreover, Mr. Lam also realized that Ibrahim's conduct was out of control and was creating an abusive work environment for Ms. Rios. Importantly, despite Defendant's argument that only two text messages from Ibrahim are not sufficiently severe or pervasive to be sexually harassing, Ms. Rios actually complained to Mr. Lam about other aspects of Ibrahim's misconduct well before she received the messages referenced by Defendant. *Powell Decl., Exh. 3,*158:15-161:2. Mr. Lam was concerned, but did not raise the issue to Fry's Home Office until he actually saw sexually harassing text messages from Ibrahim to Ms. Rios. *Powell Decl., Exh. 3,*193:14 – 194:25. At that point Mr. Lam complained on Ms. Rios' behalf.

The hostile environment created by Ibrahim was exacerbated by his position as Assistant Store Manager and his close, personal friendship with Store Manager Squires.  *See Davis*, 520 F.3d at 1096 (holding that a reasonable jury could find defendant liable for hostile work environment "because its supervisors played a significant role in creating the environment."). Ms. Rios was thus subjected to sexual harassment from someone not only in a position of great power over her, who had the ability to affect the terms and conditions of her employment regardless of his sexually harassing conduct, but also someone who had a close relationship with the one person in the store tasked with addressing such misconduct. This is a much different case than *Candelore v. Clark County Sanitation Dist*., where the court found that conduct engaged in by co-workers were "isolated incidents of sexual horseplay" and did not create a hostile work environment. 975 F.2d 588, 590 (9th Cir. 1992). Here, Ms. Rios was the direct object of

---

message made references to alcohol or Ms. Rios' breasts. He did, however, testify that he was concerned about Ibrahim's behavior and recommended Rios make a complaint. *Powell Decl., Exh. 2,* 38:7-39:24.

**PLAINTIFF EEOC'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
Page 22 of 26

EQUAL EMPLOYMENT
OPPORTUNITYCOMMISSION
Seattle Field Office
909 First Avenue, Suite 400
Seattle, Washington  98104-1061
Telephone:  (206) 220-6883
Facsimile:  (206) 220-6911
TDD:  (206) 220-6882

continuous sexually harassing behavior by her Assistant Store Manager, the same person who eventually signed her termination request.  *Powell Decl., Exh. 9.*  These were not isolated incidents involving co-workers. It was severe and pervasive conduct directed specifically at Ms. Rios from someone in a position of power over her.

       ii)     <u>Fry's Did Nothing to Address Assistant Manager Ibrahim's Sexual Harassment of Ms. Rios.</u>[15]

After both Mr. Lam and Ms. Rios complained about Ibrahim's sexual harassment, Fry's did nothing to discipline Ibrahim, assuage Rios' concerns, or redress the sexually hostile work environment. Courts in the Ninth Circuit have paid particular attention to the defendant employer's conduct when determining whether an environment was sufficiently severe or pervasive to create a hostile work environment. *See Prospect Airport Services*, 621 F.3d at 1000 ("The EEOC is correct… that the pervasiveness and the inadequate response by the employer established a jury question of whether her overtures led to an abusive environment."); *Nichols,* 256 F.3d at 876 (holding employer liable for co-workers' sexual harassment of Plaintiff where employer failed to remedy the harassment and discipline those responsible for it.).

Here, Fry's response to Ms. Rios' and Mr. Lam's complaints about Ibrahim was worse than inadequate.  Fry's allowed Ibrahim's close friend Squires to take self-serving statements as an "investigation," unlawfully fired Mr. Lam, directed absolutely no discipline towards Ibrahim, allowed Ibrahim's harassment of Ms. Rios to continue, and ultimately fired Ms. Rios and allowed Ibrahim to sign off on the termination paperwork.

Defendant failed in its obligation to protect Rios from harassment. V.P. Kolder testified that in cases where someone isn't comfortable with someone in the store conducting a sexual

---

[15] Defendant lays out the law regarding the *Faragher/Ellerth* affirmative defense, but does not make a substantive argument that this case should be summary judged based on Fry's efforts (or lack thereof) to prevent and correct the harassment experienced by Rios.  Thus Plaintiff is addressing Fry's inadequate response only in connection with the effect the lack of response had on the pervasiveness and severity of Ibrahim's harassment as experienced by Rios.

EQUAL EMPLOYMENT
OPPORTUNITYCOMMISSION
Seattle Field Office
909 First Avenue, Suite 400
Seattle, Washington  98104-1061
Telephone:  (206) 220-6883
Facsimile:  (206) 220-6911
TDD:  (206) 220-6882

harassment investigation, district managers can do the investigation. *Powell Decl., Exh. 8,* 28:6-29:2. Yet here, Kolder directed Ibrahim's close friend, Manager Squires, to look into Lam's and Rios' complaints despite the fact that both Mr. Lam and Ms. Rios complained to Fry's Home Office because they were not comfortable even telling Squires about the harassment.  Fry's did not keep Rios or Lam informed of the process of the investigation or the outcome, despite specific policies requiring that it do so, while it did keep the harasser Ibrahim informed.  *Powell Decl., Exh. 6,* 165:7-17; *Exh. 20.*  Squires conducted a woefully inadequate and biased "investigation," taking only three written statements: one from the harasser, one from a young woman who had no connection to the complaint at all, and one from a Department Manager who has since testified that he knew Ibrahim had indeed been sexually harassing Ms. Rios. *Powell Decl., Exhs. 11, 12, 18.*  Fry's did not discipline Ibrahim in any way, and it allowed his harassment of Ms. Rios to continue. *Powell Decl., Exh. 6,* 168:11-20. Fry's fired, the only person who attempted to protect Ms. Rios, just two weeks after Squires learned about his complaints. Simply put, Fry's complete failure to appropriately respond to multiple complaints about Ibrahim's misconduct exacerbated the severity and pervasiveness of the sexually hostile environment created by Ibrahim.

A reasonable jury will conclude that Ms. Rios was subjected to a severe *and* pervasive hostile work environment. She was subjected to months of sexually harassing behavior from her Assistant Store Manager and when she and Mr. Lam complained, they were both fired.

## VII:   Conclusion

Defendant has failed to meet its burden.  For the above stated reasons, Plaintiff EEOC respectfully requests that this honorable Court deny Defendant's Motion for Summary Judgment in its entirety.

DATED this 9th day of April, 2012.

**PLAINTIFF EEOC'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
Page 24 of 26

EQUAL EMPLOYMENT
OPPORTUNITYCOMMISSION
Seattle Field Office
909 First Avenue, Suite 400
Seattle, Washington  98104-1061
Telephone:  (206) 220-6883
Facsimile:  (206) 220-6911
TDD:  (206) 220-6882

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

WILLIAM TAMAYO                          P. DAVID LOPEZ
Regional Attorney                       General Counsel

JOHN F. STANLEY                         GWENDOLYN Y. REAMS
Supervisory Trial Attorney              Associate General Counsel

MOLLY POWELL
Senior Trial Attorney


BY:  */s/ Molly B. Powell*
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

Seattle Field Office
909 First Avenue, Ste. 400
Seattle, WA 98104-1061
Attorneys for Plaintiff
Ph. (206) 220-6915
Fax (206) 220-6892
Molly.Powell@eeoc.gov


Attorneys for Plaintiff EEOC

**EQUAL EMPLOYMENT
OPPORTUNITYCOMMISSION**
**Seattle Field Office**
**909 First Avenue, Suite 400**
**Seattle, Washington  98104-1061**
**Telephone:  (206) 220-6883**
**Facsimile:  (206) 220-6911**
**TDD:  (206) 220-6882**

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
CERTIFICATE OF SERVICE**

I hereby certify that on April 9, 2012, I electronically filed the foregoing **"PLAINTIFF EEOC'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT"** to the following:

Barry Alan Johnsrud, WSBA #21952
Michael A. Griffin, WSBA #29103
April Upchurch, WSBA #31910
Attorneys at Law
Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, WA 98101
johnsrudb@jacksonlewis.com
griffinm@jacksonlewis.com
april.olsen@jacksonlewis.com
206.626.6416 | Direct
206.405.0404 | Main
206.405.4450 | Fax

　　　Attorneys for Defendants

Scott C. G.  Blankenship, WSBA # 21431
Rick Goldsworthy, WSBA # 40684
The Blankenship Law Firm, P.S.
2880 Washington Mutual Tower
1201 3rd Avenue
Seattle, WA  98101
Phone:  206-343-2700
Fax:  206-343-2704
Email:  Scott:  sblankenship@blankenshiplawfirm.com
Email: Rick:  rgoldsworthy@blankenshiplawfirm.com

　　　Attorneys for Plaintiff-Intervenor

　　　DATED this 9th Day of April, 2012

　　　*/s/ Molly Powell*, Sr. Trial Attorney

**PLAINTIFF EEOC'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
Page 26 of 26

EQUAL EMPLOYMENT
OPPORTUNITYCOMMISSION
Seattle Field Office
909 First Avenue, Suite 400
Seattle, Washington  98104-1061
Telephone:  (206) 220-6883
Facsimile:  (206) 220-6911
TDD:  (206) 220-6882